[L. A. No. 629.    Department Two.—July 9, 1900.]

# F. W. BRAUN et al., Respondents, v. H. J. WOOLLACOTT et al., Appellants.

PARTNERSHIP—ACTION ON BOND OF CONSIGNEE—PLEADING—CONTINUANCE OF PARTNERSHIP.—In an action by members of a partnership against the sureties on the bond of a consignee, a complaint which averred that "during all the times hereinafter mentioned, they were copartners doing business under the firm name and style" designated, and that "ever since" a day specified the consignee named "failed and refused to account for any portion of said balance" specified which "is yet due and unpaid," may be fairly said to show a continuance of the partnership from the first time mentioned in the complaint to the commencement of the action.

ID.—EXPIRATION OF TERM — NEW FIRM—WINDING UP FORMER BUSINESS—COLLECTION OF ACCOUNTS.—Notwithstanding the expiration of the term of the original partnership, and the purchase of the interest of one of the members, and the formation of a new partnership by other members, it being agreed that certain accounts not assumed by the new partnership, including the account in suit, should belong when collected to the former partnership, it was competent for the partners to treat the former partnership as continuing for the purpose of winding up its business and collecting the account in suit.

ID.—BOND GIVEN TO PARTNERSHIP—ACTION IN FIRM NAME AFTER DISSOLUTION.—Where the bond sued upon shows upon its face that it was given to the partnership bringing the action, the action may be brought thereon by the partners in the copartnership name, notwithstanding the previous dissolution of the partnership by the expiration of the term limited therefor.

ID.—CONTINUING POWERS OF PARTNERS AFTER DISSOLUTION.—The powers of the partners with respect to rights created pending the partnership remain after dissolution.

ID.—AGREEMENT OF PARTNERSHIP TO CONSIGN MERCHANDISE—CONSTRUCTION OF BOND OF CONSIGNEE.—Where the partnership made an agreement for a term of one year to consign a stock of merchandise and such other goods as the parties might after its date agree upon, to be handled by the consignee on consignment only, etc., a contemporaneous bond given by the consignee to the partnership for the faithful discharge of all his duties as consignee, and to account for all money, and all property, goods, and chattels and other things which might come into his possession or under his control as such consignee, within a limit of two thousand dollars, is to be construed as applying to all goods consigned and accepted on consignment during the life of the

contract, and as standing for the faithful performance of all the covenants of the consignee, not exceeding the limit of two thousand dollars.

ID.—PAROL EVIDENCE—EXPLANATION OF UNAMBIGUOUS CONTRACT —The contract and bond being unambiguous in their terms, parol evidence is inadmissible to show the meaning of the phrase "stock of merchandise" used in the contract, and that the contract and bond were understood by the parties to be limited to the first "stock of merchandise" furnished to the consignee to enable him to open up business, and to mean that no more merchandise than two thousand dollars in value was to be furnished to him.

ID.—PLEADING — INCOMPETENT DEFENSE— PROPER EXCLUSION OF EVIDENCE — CONVERSATIONS PRIOR TO WRITTEN CONTRACT.—The fact that the answer alleged as matter of defense facts which were irrelevant, immaterial, and incompetent, in regard to the construction of the contract and bond, and as to what they were intended to cover, cannot justify parol evidence to show conversations between the parties prior to the execution of the written contracts, for the purpose of interpreting them contrary to their unambiguous meaning.

ID.—LIABILITY OF SURETIES OF CONSIGNEE — HANDLING OF GOODS BY PARTNERSHIP.—The goods having been consigned to the consignee personally in pursuance of the contract, the sureties on his bond are liable for his failure to account therefor within the limit of two thousand dollars, and it is immaterial that the goods were in fact handled by a partnership of which he was a member.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

T. E. Gibbon, and Charles T. Howland, for Appellants.

Borden & Carhart, Sheldon Borden, and Walter Rose, for Respondents.

CHIPMAN, C.—Action against defendants as sureties on a bond executed by one A. J. Newton for the faithful performance and accounting to plaintiffs by him as consignee of certain goods. Plaintiffs had judgment, and defendants appeal from an order denying their motion for new trial.

1. It is contended that the complaint does not state a cause of action because it fails to show that plaintiffs were copartners

when the action was commenced, and is therefore fatally defective. (Citing *Afferbach v. McGovern*, 79 Cal. 268; *Fredericks v. Tracy*, 98 Cal. 658; *Holly v. Heiskell*, 112 Cal. 174.) The point was raised at the trial by an objection to any testimony being introduced by plaintiffs for the reason above stated; there was no demurrer to the complaint. The court found that plaintiffs had capacity to maintain the action as copartners, and this finding is also attacked; the two points will be considered together. The allegation of the complaint is: "That during all the times hereinafter mentioned they [plaintiffs] were copartners doing business under the firm name and style of F. W. Braun & Co."

The cases cited were actions to recover possession of personal property, and it was held that the complaint must show right of possession when the action is commenced. The allegation of the complaint covers all the times mentioned therein, and these dates embraced the transactions sued upon.

There is also an allegation "that said Newton has ever since said twenty-sixth day of December, 1894, failed and refused to account for any portion of said balance, . . . . and the said balance, to wit, the sum of five hundred and ninety-seven dollars and fifty cents, is yet due and unpaid on said account." We think the allegation that plaintiffs "during all times hereinafter mentioned were copartners," etc., may fairly be said to include the times above stated during which the account sued for remained due and unpaid, and this included the filing of the complaint.

The court found that plaintiffs were copartners at the time of the execution of the bond sued upon, and "that as to the cause of action sued there has never been any dissolution of said copartnership, and the same has ever since continued in existence, and still continues to exist." It appeared that on December 31, 1894, a written agreement was executed by all the copartners by which Brunswig purchased Finlay's interest in the firm, and that on that day the copartnership contract expired. All doubtful claims due the old firm were by the agreement to be passed to profit and loss before the firm books were to be balanced, "and all said accounts or notes must be given immediately to reliable attorneys for collection by suit, proceeds of

which to be divided *pro rata* between us when received." Braun, one of the firm, testified that the account here in controversy was rejected by the new firm and passed to attorneys for collection, and that there has never been any other dissolution of the copartnership except as in the agreement set forth. "As to those accounts we have had no final settlement." Appellant contends that the contract entered into by the partners included in the assignment to the new firm all the doubtful accounts. Finlay was to receive a stated sum in money, which was paid, and it was also provided: "The balance due me [Finlay] for interest on capital, and for profits for the year 1894, as will appear when said books are balanced, to be immediately paid to me also by said L. N. Brunswig." Following this was a provision that in ascertaining the profits the new firm should have the right to reject accounts "they may deem doubtful or not collectible," and these were to go to profit and loss, and to belong to all the original partners when collected. We think the trial judge rightly held this contract to mean that as to these doubtful accounts they were to belong to all the partners, and as to them that the partnership continued for the purpose of enforcing collection by suit or otherwise.

It does not appear, except by a recital in the agreement of sale to Brunswig, just when the partnership expired, and it is only from the agreement that we can determine that the partnership had expired by limitation. Assuming that it had so expired, it was competent for the parties to treat it as continuing for the purpose of winding up the business, and this, it seems to me, may fairly be inferred was the intention. The bond given by defendants on its face shows that it was given to the firm, and we see no reason why the action might not be brought in the name of the partners suing in their copartnership capacity.

In *Busfield v. Wheeler*, 14 Allen, 139, the case was that of a debt to a copartnership secured by lien. The claim had been assigned to one of the partners on dissolution and the action was subsequently brought in the name of the firm. The court said: "The debt, and the lien for its security, accrued to the copartnership. All proceedings for enforcement of the claim must be had in the name of the copartnership, notwithstanding its dissolution and the assignment of his interest by one copartner to

the other.   The remaining partner takes all the rights of the firm, and may exercise them in the name of the firm, for all purposes necessary for their enforcement and for closing up the joint business.   The demand was properly made, therefore, by Busfield in the name of the firm; and the statement that the whole interest belonged to himself does not injure its effect." That the action may be brought in the name of the copartnership, see *Peacock v. Peacock*, 15 Ves. 49; *Crawshay v. Maule*, 1 Swanst. 495, 506, et seq.; *Ex parte Williams*, 11 Ves. 3; *Molen v. Orr*, 44 Ark. 486; *Holmes v. Shands*, 26 Miss. 639.

The rule is similarly stated in Lindley on Partnership, volume 1, star section 217.   Mr. Collyer says that "the powers of partners, with respect to rights created pending the partnership, remain after dissolution."   (Collyer on Partnership, secs. 186, 199, cited in *Osment v. McElrath*, 68 Cal. 466.[1])

2. It is contended that the court erred in holding that the bond covered a continuous furnishing of goods by plaintiffs to Newton and in not restricting the contract to the first consignment.   It appears that plaintiffs agreed in writing on January 11, 1894, to deliver to Newton on consignment certain merchandise on condition that he would, before the agreement was to go into effect, make a bond with two sureties satisfactory to plaintiffs for the faithful performance of the agreement.   Newton furnished the bond, now in suit, on January 17, 1894, and on the 18th or 19th of January plaintiffs made the first delivery of goods.   Deliveries continued from time to time under the agreement until December 1, 1894, the total amounts being four thousand four hundred and forty-eight dollars and sixty-eight cents, of which Newton paid three thousand eight hundred and fifty-one dollars and eighteen cents, leaving unpaid five hundred and ninety-seven dollars and fifty cents, for which the action was brought.

Both parties treat the written agreement between Newton and plaintiffs and the bond executed by defendants as contemporaneous agreements to be considered together.   The agreement to consign goods was to continue in force for one year, and was dated January 11, 1894.   It contained the following: "That the said first parties [plaintiffs] agree to deliver to their place

[1] 58 Am. Rep. 17.

of business in Los Angeles, to A. J. Newton, a stock of merchandise consisting principally of paints and paint goods, and such other goods as the parties may hereafter agree upon, said goods to be handled by said second party on consignment only"; the ownership of the goods was to remain in first parties until sold and paid for, and Newton had the right to sell in the course of trade, "and all goods sold in each month shall be paid for in cash on or before the 10th of the succeeding month at the invoice price. And the said second party agrees to take an inventory of stock on hand the 1st of each month, and report to said first parties on or before the 10th of each month the amount of goods on hand the first day of the month, and amount of sales at invoice price during the preceding month." First parties also had the right "to investigate the stock on hand in possession of second party, and also the books of account to verify the statements as to the stock on hand and sales, hereinbefore provided for," etc. The bond contained substantially the same provisions and provided that "if the said Newton shall well and faithfully discharge his duties as such consignee, and shall also account for all moneys and all property, goods, and chattels, and other things which may come into his possession or under his control as such consignee, then the above obligation to be void, otherwise," etc.; the limit of liability was two thousand dollars. Deliveries of goods, under the contract, did not reach the limit until in April. Payments were made and accounts rendered by Newton and goods were delivered to him from time to time until December, when he failed and became insolvent, at which time he owed the amount now claimed. Appellants contend that the bond limits their liability "to the first stock lot or supply of goods delivered by plaintiffs to Newton for the purpose of enabling him to open business and for stocking his store to that end." We are cited to lexicons for the meaning of the word "stock." The definitions given do not confine the meaning to the goods with which the merchant begins business, but rather to the goods he employs in trade. I do not see that the dictionaries throw any light upon the meaning of the bond or agreement.

Without going into an analysis of the various clauses of the bond and agreement which bear upon the point, it seems evident from the contracts themselves that the intention of the parties

was that during the life of the bond plaintiffs were to consign to Newton as his requirements demanded and as the parties might agree, and defendants, as sureties, stood for Newton's faithful performance of his covenants within the limit of two thousand dollars. In this view of the agreement, which was the view of the trial court, it was not error to refuse the evidence offered by defendants to show the meaning of the phrase "stock of merchandise," and that the contracts were understood to mean that no more goods than two thousand dollars in value were to be furnished to Newton. Other questions similar in character and involving the same principle were rightly refused. Nor was it material that Newton had a partner in business, and that this copartnership handled the goods. They were sold to Newton; the contract was with him and the account was kept with him, and to him alone plaintiffs looked for their money. It was immaterial how he disposed of the goods or to whom, so long as he paid for them according to his contract. Defendants alleged in their answer, among other things, that the bond was given to secure the payment of a single stock of goods, and that it was not intended to cover or secure the payment for any future sales and delivery of goods, and that it was the intention of defendants, when executing the bond, that when the first stock of goods furnished was paid for, the bond should thereby be satisfied, and all liability of defendants would thereupon cease. It was to prove these allegations of the answer that defendants offered to show the intention of defendants by conversations had between the parties prior to entering into the contracts. We can discover no such ambiguity in either of the instruments as would warrant us in holding parol evidence admissible to explain their meaning, or to show the intention of the parties in entering into them. The fact that the answer alleged facts which were irrelevant, immaterial or incompetent as a defense gave no right to establish them by proof, and it was not error to exclude the evidence sought to be introduced to establish such facts.

We advise that the order be affirmed.

Gray, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed.                    McFarland, J., Temple, J., Henshaw, J.