[Civ. No. 17896. First Dist., Div. One. Oct. 16, 1958.]

LOUISE FOOTE, Appellant, v. GERALD V. POSEY et al., Respondents.

212

Leon H. Sorell for Appellant.

Depaoli, Cotter & Del Carlo for Respondents.

BRAY, J.—Plaintiff sued defendants Gerald V. Posey and Linda Posey to quiet title to real property hereafter referred to as 2094 Mission Street, San Francisco. Defendants answered, then filed an amendment to their answer and eventually a cross-complaint bringing in as cross-defendants with plaintiff, Emil Fritz and Frank Cotton. By these pleadings said defendants and cross-complainants alleged, in effect, that plaintiff and said Fritz and Cotton were partners or joint adventurers in the purchase of real property at the corner of 17th and Mission Streets, consisting of three pieces, namely, said 2094 Mission, 2090 Mission and 3312 17th Street; that Cotton acted as plaintiff's agent and managing partner and had the title to 2094 Mission placed in plaintiff's name; that subsequently Cotton on behalf of plaintiff, Fritz and himself, negotiated the sale and transfer to cross-complainants of certain notes and deeds of trust, among which was a note dated October 17, 1955, in the amount of $7,750, secured by a deed of trust on 2094 Mission. The cross-complaint alleged that a judgment had been entered in the superior court adjudging that plaintiff, Fritz and Cotton were each owners of an undivided one-third of 2094 Mission; that in its purchase the parties were partners or joint adventurers and that in the sale of said notes and deeds of trust to defendants, Cotton was acting under authority invested in him by plaintiff and Fritz, and that cross-complainants in the purchase of said note and deed

of trust relied upon such authority. Cross-complainants prayed that the validity of said note and deed of trust be determined. Cross-defendants Cotton and Fritz filed an answer admitting all of the allegations of the cross-complaint. The trial court found the allegations of the cross-complaint to be true; that plaintiff, Cotton and Fritz were joint adventurers; that it was not contemplated that the ownership of 2094 Mission was to be solely in plaintiff; that Cotton acted for the joint venture and that the note and deed of trust held by cross-complainants are a valid lien upon said property. Plaintiff appeals.

The judgment is a rather peculiar one. It provides that ''defendants have judgment against plaintiff on the complaint and that cross complainants have judgment against the cross defendants on the cross complaint. . . .'' Apparently this judgment established the validity of cross-complainants' lien upon 2094 Mission but leaves the determination of plaintiff's exact ownership to the other superior court action, the judgment in which was on appeal at the time of the rendition of the subject judgment, but which appeal was later dismissed by Division Two of this court. (See *Fritz* v. *Foote,* 162 Cal. App.2d 622 [328 P.2d 522].)

QUESTIONS PRESENTED

1. Was there a joint venture in which Cotton had authority to bind plaintiff in the execution of the Posey note and deed of trust?

2. Are section 1624, subdivision 5, Civil Code, section 1973, Code of Civil Procedure, and section 2933, Civil Code, involved in this case?

3. Effect of introduction of record of the other action.

1. *Joint Venture.*

 There can be no question under plaintiff's own testimony as well as the other evidence that there was a joint venture and that Cotton had full power to bind plaintiff in the transaction.

Plaintiff testified that she had known Cotton, a real estate broker, for a number of years. In June, 1955, she saw an advertisement for the sale of certain property. Answering it, she discovered that he was the broker. She did not like the property offered. Shortly thereafter Cotton phoned her about another piece of property. She placed $6,500 in escrow and Cottton negotiated the purchase of it for her. She did not remember the total purchase price, the $6,500 being only the

down payment. Apparently she paid nothing further. In 20 days he sold it for her for a profit of $900. She signed some papers in connection with the transaction but does not know what they were. In July he told her about the three pieces of property at 17th and Mission, the total price of which was $110,000. She was to put up $5,000, and there were supposed to be seven investors each to put up $5,000. (In her deposition she stated that there were to be several investors.) She was to be in partnership with those who put up the money. She was to give Cotton $5,000 and he was to use it and similar amounts to be obtained from others, as a down payment. She gave Cotton $5,000 and knew that Fritz had put up $5,000. The three pieces were to be purchased as a unit. She did not know that any of the properties was to be taken in her name only. Cotton was to negotiate for them and divide them later and sell them separately. It was her understanding that Cotton was acting for and on behalf of her and Fritz in the entire transaction. She left the entire transaction up to his discretion, and at all times Cotton was acting in the capacity of her agent. He was to invest the $5,000 for her. She signed no papers in connection with the transaction. Cotton collected the rents on the property after it was purchased. Apparently plaintiff never inquired of Cotton concerning the transaction up to the time the Poseys gave notice of default under the deed of trust. From her own testimony it is clear that she gave Cotton $5,000 to use together with that of other investors, to purchase property whose price was $110,000, and left the entire handling of the transaction to Cotton. Thus, a joint venture with authority in Cotton to act for her was proved, even though she did not know that Cotton was to be one of the investors. She left the complete selection to him.

Cross-complainant Gerald Posey testified that he and his partner had purchased the property (the three pieces) from a Mrs. Hadsell with "a lengthy period of time for closing" (apparently they had merely an option to purchase) so that they might sell one or two pieces to complete the deal. Cotton negotiated for some time with him for the purchase of the property. The record is a little vague as to just what happened next. As nearly as we can make out from most confused testimony, the following is what happened: Posey was to get $118,500 for the property, out of which he was to pay Mrs. Hadsell. Posey was to receive $10,000 down and the balance was to be secured by mortgages. For some reason, Posey had Mrs. Hadsell convey the property as follows: one parcel (2094

Mission) to Posey, another parcel to Posey's partner, and the third parcel to an employee of Posey's. 2094 Mission was subject to a $27,500 deed of trust, 2090 Mission to a $40,000 deed of trust, and 3312 17th subject to a $22,500 deed of trust. Then there was a second deed of trust for $10,000 covering all three parcels. Then on each parcel there was a third deed of trust of $6,166.67 or a total of $18,500 on all three. With the down payment of $10,000 the total of these mortgages came to $118,500, the purchase price. Thereafter Cotton sold the 17th Street property and 2090 Mission. From such sales the $10,000 deed of trust which covered 2094 Mission as well as the other lots was paid off excepting $1,583.33. Posey then conveyed 2094 Mission to plaintiff subject to the $27,500 first deed of trust and a second deed of trust to him and Mrs. Posey for $7,750 (the note and deed of trust in controversy). This amount was arrived at by adding to the $6,166.67 third deed of trust above mentioned and whose lien was wiped out by the conveyance to plaintiff, the said $1,583.33 balance due on the blanket deed of trust which likewise was reconveyed. Thus, after this more or less frenzied finance, the situation immediately prior to foreclosure of the $7,750 Posey deed of trust was that on a down payment of $10,000 put up jointly by plaintiff and Fritz on a purchase price of $118,500, for three parcels of land, two of the parcels were sold and the third, 2094 Mission, stood of record in plaintiff's name (but in a prior action was held to belong to plaintiff, Fritz and Cotton) subject to a first deed of trust to Mrs. Hadsell for $27,500 and a second deed of trust to cross-complainants for $7,750. There is no evidence as to what this property was or is worth.

Plaintiff did not sign or see any of the notes or deeds of trust given in these transactions. The $10,000 blanket note and deed of trust, the $6,166.67 note and deed of trust and the $7,750 note and deed of trust all bear what appear to be plaintiff's signatures. However, admittedly they are not her signatures but were written by Cotton. Curiously enough, the evidence shows a notary public acknowledged her purported signature on the $7,750 deed of trust. Probably the same is true of the other purported signatures. Posey testified that he had no knowledge that the signatures were not genuine.

Plaintiff makes much of the fact that Cotton "forged," as plaintiff calls it, plaintiff's signatures. ▮ Although a part-

ner in a joint venture has, as here, authority to bind his coadventurers, he has no authority to write their signatures. If he signs their names he must indicate he is doing so as partner or agent. (See Civ. Code, § 1095.) It would appear that Cotton without informing plaintiff decided to cut himself in as one of the partners in the venture and considered that his services in handling the transaction were of equal value to the $5,000 which each of his coadventurers paid in.. Apparently this arrangement was satisfactory to Fritz. Plaintiff's testimony shows that she was not concerned about who her partners were to be, but left the selection to Cotton. However, he had informed her that each partner-to-be would put in equal moneys with hers. We withhold comment as to the propriety of Cotton's actions and the rights between him and plaintiff. As this is not an action between Mrs. Foote and Cotton, we are only concerned with the situation as between plaintiff and the Poseys.

■ A joint venture has been defined as an undertaking by two or more persons jointly to carry out a single business enterprise for profit with its existence dependent upon the intention of the parties as shown by an express agreement or by inference from their acts and conduct. (*Lasry* v. *Lederman* (1957), 147 Cal.App.2d 480, 485 [305 P.2d 663]; *Beck* v. *Cagle* (1941), 46 Cal.App.2d 152, 161 [115 P.2d 613].)

■ There is a difference in the determining of the relationship where third parties are involved, as here, and where the issue is only between the parties themselves. In the case of third parties the fundamental question is what had those parties the right to believe from the language of any contract and from the conduct of the parties to it as affecting them, and not as affecting each other. (*Westcott* v. *Gilman* (1915), 170 Cal. 562 [150 P. 777, Ann.Cas. 1916E 437].)

■ Under the circumstances, plaintiff clothed her coadventurer, Cotton, with the authority to represent her in the joint venture. Poseys had the right to assume when Cotton, who had requested Poseys to deed the property to plaintiff, delivered Poseys a note and deed of trust purporting to be signed by plaintiff, the deed of trust bearing a notary's acknowledgment, that the documents were all they purported to be. Plaintiff, as well as Fritz (who admits it), held Cotton out as having the authority to fully represent her. Had he signed her name by him as agent or coadventurer there can be no question but that he was carrying out the transaction for her, which transaction she testified she left to his discretion.

The fact that he signed her name without designating that it was not her signature, did not minimize his authority to bind her in a transaction where the third party parted with value, knowing that Cotton was acting for her as well as himself and Fritz, but without knowing that the instruments given him which appeared to bear her signature did not actually do so.

Even though Cotton exceeded the authority which plaintiff intended him to have, she, in effect, held him out to Posey as having that authority. To hold that the property is not subject to the Posey deed of trust would permit plaintiff to have that property without paying the full purchase price, thereby profiting by Cotton's exceeding his authority, if he did, to the damage of the Poseys who were innocent in the transaction.

### 2. *Code Sections.*

Section 1624, subdivision 5, Civil Code, requires an agreement authorizing an agent or broker to sell or buy real estate for compensation or commission to be in writing. Section 1973, Code of Civil Procedure, provides that evidence of such an agreement cannot be received without the writing being produced. Obviously, Cotton was not acting as plaintiff's agent for compensation or commission. He was a principal along with her in the transaction. The authority of a joint adventurer to bind his coadventurers does not have to be in writing. The authority may be oral or implied from the circumstances. (See *San Francisco Iron etc. Co.* v. *American Milling etc. Co.* (1931), 115 Cal.App. 238, 246 [1 P.2d 1008].) Section 2933, Civil Code, requires that a power of attorney to execute a mortgage must be in writing. As the Poseys are innocent third parties plaintiff, under the circumstances of this case, is estopped to claim the benefit of this section. None of these sections apply to the situation here.

### 3. *Prior Record.*

The court file in the prior action referred to in the cross-complaint was admitted in evidence without objection. Unfortunately, the judgment was not then final, so that it could not be res judicata. (See Witkin, California Procedure, 1934-1935.) It was an action brought by cross-defendant here, plaintiff there, Fritz, against plaintiff here, defendant there, Mrs. Foote. Neither cross-defendant Cotton nor cross-complainants. Posey were parties to it. It adjudged that Mrs. Foote, Fritz and Cotton were the owners of 2094 Mission. As no objection to its introduction was made, the trial court can-

not be charged with error in admitting the file. Whether the court considered it in making its determination we do not know. The findings merely find that such an action was brought and what the judgment was. The evidence in our case was not conflicting. No facts contrary to the facts related herein were produced. Therefore, whether there was a joint venture in which Cotton had authority to bind plaintiff is a matter of law. Disregarding entirely the other action, such a venture under the evidence must be declared as a matter of law. Hence, it is immaterial whether or not the trial court considered the other action. With or without it, the court could have come to no other conclusion than it did.

The judgment is affirmed.

Peters, P. J., and St. Clair, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.