**W. C. HEINZ, Plaintiff,**

v.

**SIMON & FLYNN, INC. and Sander Simon, Defendants.**

No. 77 Civ. 2230 (KTD).

United States District Court,
S. D. New York.

Jan. 13, 1978.

Kurtz & Vassallo, P. C., New York City, for plaintiff.

Jacob Rabinowitz, New York City, for defendant Sander Simon.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge. ·

Plaintiff has moved for partial summary judgment in this diversity action alleging six claims for relief arising out of a purported breach of contract.

It appears that on June 1, 1968 plaintiff and Vince Lombardi Enterprises, Inc. (Lombardi) entered into an agreement with defendant Simon & Flynn, Inc. (Simon & Flynn), of which defendant Sander Simon (Simon) is president, for the joint production of a series of films and a book based on the coaching philosophy and methods of Vincent Lombardi, the late celebrated professional football coach. The agreement provided, *inter alia*, for the profits derived therefrom to be shared 40 per cent to Simon & Flynn, and 30% each to plaintiff and Lombardi; for Simon & Flynn to render semi-annual statements of account to plaintiff and Lombardi reflecting their respective shares of profit accompanied by payments therefor; for the films to be copyrighted in the parties' joint names in accordance with their respective profit participations and with each party executing the requisite documents so as to effect copyright protection; and for Simon & Flynn to be solely responsible for the distribution and exploitation of the films. The term "profits" was defined as "the gross receipts derived by [Simon & Flynn] from the programs and the book, less the actual costs and expenses incurred by [Simon & Flynn] in production, manufacture, sales and distribution." (Complaint Exhibit A ¶ 9(b)). This agreement was signed purportedly on behalf of Simon & Flynn by George Flynn (Flynn), Simon & Flynn's former Vice President and Managing Agent.

On January 13, 1969 Simon & Flynn, by Flynn, entered into an agreement with Holt, Rinehart and Winston, Inc. (Holt) for the production and licensing of the series of twelve films entitled "The Science and Art of Football", which were produced pursuant to the agreement with plaintiff. The Holt agreement provided for a total advance payment to Simon & Flynn of $250,000 and a guaranteed royalty of $1,500,000 by December 31, 1973, or 32 per cent on the difference between the guarantee and actual sales if the guarantee exceeded the total sales as of that date. This guarantee included a total of $750,000 to be recouped by Holt upon which no royalty was to be paid. Additionally, any royalties paid pursuant to the guarantee which were not earned out were to be deemed an advance against future royalties. The Holt agreement was subsequently amended by Simon, on behalf of Simon & Flynn, so as to reduce the guaranteed royalty to $1,250,000 by December 31, 1974. On July 23, 1970 Simon & Flynn, again by Simon, agreed to deem the guaranteed royalty paid in consideration of an $85,000 prepayment and to free Holt of its obligation to make further royalty payments until sales of the films exceeded $1,250,000.

It is undisputed that Holt distributed the film series and paid Simon & Flynn $85,000 pursuant to the above agreement to do so. It is also conceded that no accountings were rendered plaintiff for any sums received by Simon & Flynn in connection with the exploration of the film series, and that plaintiff received no monies therefor, except for $4,000 paid to plaintiff in August 1969. Also conceded is the fact that the copyright on the film series fails to reflect plaintiff's ownership interest therein.

Based on the above, plaintiff seeks a judgment against Simon & Flynn on his first, second and third claims, directing Simon & Flynn to account to him for sums due him under the production agreement, to pay him the sum of $21,500 representing 30 per cent of the $85,000 received from Holt less the $4,000 already received, and to take the appropriate steps to record his copyright interest. In addition, plaintiff, alleging in his sixth claim that Simon converted $50,000 of the $85,000 received from Holt,

seeks to compel Simon to account for the same.

In opposition to plaintiff's motion, Simon has submitted an affidavit attesting that no profits within the meaning of the term as defined by the agreement in issue between the parties have been earned by Simon & Flynn for which it need account to plaintiff since neither the production costs of the series "The Science and Art of Football" nor the internal costs of defendant were fully recouped. Although Simon attests to the failure of Simon & Flynn to obtain a copyright on the series, he claims that this failure was due to the negligence of Flynn, upon whom Simon purports to cast liability for any failure of Simon & Flynn to perform the obligations under the agreement with plaintiff. Additionally, Simon attests to the receipt, on July 24, 1970, of $50,000 as partial payment of a $165,060 debt due him from Simon & Flynn. Although in this manner he denies converting any portion of the sums paid by Holt under the July 23, 1970 modification, he contests plaintiff's standing to sue for conversion of monies paid Simon & Flynn.

The only documents proffered in support of defendants' position are copies of Flynn's bankruptcy petition as well as complaints filed by Simon & Flynn in state and federal court in which Flynn is named as a party defendant. Both complaints apparently were dismissed. Additionally, Simon has proffered a copy of an amended answer in this action, asserting a third-party complaint against Flynn and others, which was served on and rejected by plaintiff's counsel in August 1977. However, the unproven assertions of liability on the part of Flynn bear only on any obligation Flynn may owe or have owed to defendants, and are insufficient to create an issue of fact as to any unfulfilled obligations owed by defendants to plaintiff in this action.

■ Conspicuously absent from Simon's submissions is any documentation pertaining to Simon & Flynn's production and internal costs to support his claim that the existence of such costs precluded the rendering of profits to which plaintiff would be entitled to a 30 per cent share. Indeed, Simon & Flynn's agreement with Holt specifically provided for a $250,000 advance in addition to the $85,000 prepayment deemed a guaranteed royalty; Simon has not seen fit to address the disposition of that advance. In opposing the instant motion, defendants cannot "rest upon mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e) F.R.Civ.P. This plaintiff has failed to do. In light of Simon & Flynn's undisputed receipt of $85,000 from Holt in connection with the distribution of the films, and defendants' failure to come forward with even a shred of proof regarding its costs, Simon's conclusory statement that "at worst the proceeds are an issue of fact" do not make it so and is certainly insufficient to defeat the instant motion as it pertains to those proceeds.

Moreover, the agreement between the parties obligated Simon & Flynn to make semi-annual statements of account to plaintiff "in each year in which there are gross receipts" (¶ 15) regardless of profit. Simon's affidavit is silent with respect to this obligation; no reason is offered for the failure of Simon & Flynn to render such statements to plaintiff even were the venture generating no profit.

■ The failure of Simon & Flynn to copyright the films so as to evidence plaintiff's ownership participation is admitted. Simon attests that documents not presently before this Court are in existence, indicating Simon & Flynn's attempts to obtain the copyright. He seeks to excuse the failure of these attempts by claiming that "Flynn made such effort negligently." This excuse is irrelevant to plaintiff's contractual right to have the series copyrighted and to have that copyright reflect his proprietary interests therein. There appears to be no reason why this protection cannot be obtained by defendants at this time.[1]

---

1. Indeed, defendants have not alleged anything to indicate that copyright protection would not be obtainable at this time.

Turning to the sixth cause of action; *i. e.*, plaintiff's conversion claim against Simon, Simon contests plaintiff's standing to assert this claim since the monies purportedly converted were paid to Simon & Flynn. Plaintiff argues that he can properly prosecute this suit "as a joint venturer seeking recovery from his co-venturer, Simon & Flynn, of specific funds paid over to that corporation in its fiduciary capacity as trustee of revenues earmarked for distribution among the three co-venturers." (Abrams Reply Aff. ¶ 10). If this is the case, plaintiff's claim must fail since it is merely asserted against Simon and not the co-venturer Simon & Flynn. In any event, if plaintiff is seeking to invoke his standing as a joint venturer by virtue of the joint production agreement in issue to recover monies claimed to have been wrongfully diverted by Simon from the joint venture, his claim nevertheless is improperly asserted. Plaintiff, as an individual, cannot assert his entitlement to an accounting and the recovery of such sums free of the joint venture. By plaintiff's own admission he would be entitled to but a share of these funds, and any claim to the monies and recovery would be of necessity on behalf of the joint venture. *See D'Ippolito v. Cities Service Co.*, 374 F.2d 643 (2d Cir. 1967) *citing Kirschbaum v. Merchants Bank of New York*, 272 App.Div. 336, 71 N.Y.S.2d 79, 80 (1st Dept. 1947); *Ruzicka v. Rager*, 305 N.Y. 191, 197, 111 N.E.2d 878, 881 (1953); *Stevens v. St. Joseph's Hospital*, 52 A.D.2d 722, 381 N.Y.S.2d 927 (4th Dept. 1976). Since this claim for conversion would belong to the joint venture and not to plaintiff individually, summary judgment on this claim is denied and the claim is dismissed.

Accordingly, plaintiff's motion is granted to the extent that it seeks partial summary judgment on his first, second and third claim as follows: defendant Simon & Flynn is directed to render an accounting to plaintiff in accordance with the agreement between them, to pay over to plaintiff the sum of $21,500 plus interest, and to take all necessary steps to record plaintiff's joint ownership in the copyrights on the subject matter of the agreement. To the extent that plaintiff seeks summary judgment on his sixth claim, the motion is denied and the claim dismissed.

SO ORDERED.