**KDH CORPORATION and Richard W. Bates, a Joint Venture, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 558–86C.

United States Claims Court.

April 30, 1991.

Richard D. Corona, San Diego, Cal., for plaintiff. Corona & Prager, of counsel.

Mark Rubino, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. M. Martha Ries, on the briefs. Anthony R. Crouse, Dept. of the Navy, of counsel.

## OPINION

NETTESHEIM, Judge.

Defendant has moved to dismiss or, in the alternative, for partial summary judgment.[1] The case was reassigned to this judge on November 2, 1990, after completion of briefing. Subsequently, argument was held during which defendant raised a new—its third—bar to the Claims Court's exercising jurisdiction, to wit, that the contractor's claim had not been submitted to the contracting officer, as required by the Contract Disputes Act of 1978, 41 U.S.C. § 605(a) (1988) (the "CDA"). Since on the date of argument this new issue was on appeal after argument in *Dawco Construction Inc. v. United States*, 18 Cl.Ct. 682 (1989), *appeal docketed*, No. 90–5074 (Fed. Cir. Apr. 6, 1990), plaintiff's counsel suggested suspending the case until guidance was received from the appeals court. The

Federal Circuit rendered its decision in *Dawco* on April 3, 1991, No. 90–5074, 930 F.2d 872 (Fed.Cir.1991), *aff'g in part, rev'g in part, and remanding* 18 Cl.Ct. 682, holding that submission of a claim to the resident officer in charge of construction was "submitted" as required by section 605(a) of the CDA. *Dawco*, at 880. After *Dawco* issued, defendant advised that also pending before the Federal Circuit is a permutation of the same issue—whether a claim must be directed to the contracting officer because section 611 of the CDA requires that interest begins to accrue from the date on which the contracting officer receives the claim, pursuant to section 605(a), from the contractor. *Neal & Co., Inc. v. United States*, 19 Cl.Ct. 463, *appeal docketed*, No. 90–5108 (Fed.Cir. June 7, 1990). Mercifully—since plaintiff had filed this case in 1986—defendant also advised that instead of a further stay the court may decide the case on the jurisdictional arguments that have been briefed fully. Def's Br. filed Apr. 17, 1991, at 4 nn. 1 & 2. Those issues are whether after the death of one co-venturer the remaining co-venturer may maintain a suit in the name of the joint venture without substituting a proper party having the right to continue the action and under what circumstances a co-venturer in its individual capacity permissibly may certify a contract claim for a joint venture contractor.

## FACTS

KDH Corporation and Richard W. Bates, a joint venture ("plaintiff"), seeks an equitable adjustment of the joint venture's contract with the United States Navy (the "Navy"). Plaintiff asserts that it is due an increase in contract price as a result of allegedly differing site conditions and purported ambiguities in the contract. Specifically, plaintiff seeks to recover overhead costs and labor overruns of $348,481.46, receive an extension of the contract time

---

1. Partial summary judgment is sought on the basis that the doctrine of accord and satisfaction bars 30 of plaintiff's claims. Were jurisdiction present, the existence of a genuine issue of material fact as to the parties' intentions to except these claims from bilateral modifications to the contract would require denial of defendant's motion.

for an additional 206 days, and obtain a release of liquidated damages.

On September 28, 1982, the Navy awarded plaintiff contract No. N 62474–82–C–D 705 for the construction of an integrated circuit facility in an existing concrete structure, Battery Ashburn North, Naval Ocean Systems Command, San Diego, California. The contract included demolishing portions of the structure; erecting new walls; providing roofing; and installing HVAC (heating/ventilation/air-conditioning); fire sprinkler, electrical, acoustical, and alarm systems. The original contract price was $817,719.00. As initially contemplated, contract performance consisted of a 150–day period, with a completion date of March 12, 1983. Contract modifications extended the completion date to November 21, 1983, and increased the contract amount to $1,800,112.00.

During contract performance plaintiff encountered numerous alleged defects in the contract specifications resulting in 38 change orders for contract modifications. Plaintiff claims that it reached an accord with the Navy whereby plaintiff could later submit claims for Indirect/Impact Costs, notwithstanding the executed modification agreements. In its submitted cost proposals, plaintiff purportedly made an express reservation of the right to make future claims for costs. According to plaintiff, the parties understood that the cost proposals did not incorporate all costs sustained.

By letter dated March 25, 1986, the joint venture's attorney submitted a certified claim "on behalf of the Joint Venture," referred to as "KDH." [2] The claim letter stated:

> The certification of this claim, duly executed by Richard W. Bates, appears below. On behalf of KDH, we hereby request that this claim be submitted to the Contracting Officer for a Final Decision, in accordance with Clause 6(e) of the subject Contract.

Mr. Bates signed the certification for KDH Corporation; he was designated as Presi-

dent. The Resident Officer in Charge of Construction (the "ROICC") received the claim on April 7, 1986. The ROICC informed plaintiff that additional information, specifically a Form DD 633, was necessary to process the claim. Due to plaintiff's delay in submitting a Form DD 633, an audit of its claim did not begin until July 31, 1986.

Plaintiff filed suit in the Claims Court on September 3, 1986, under section 605(c)(5) of the CDA, on the basis of the ROICC's failure to issue a decision within the required 60 days. The case was suspended thereafter from March 6, 1987, to October 5, 1987, because co-venturer Bates had died and because plaintiff's financial records were "apparently inadvertently scattered to various locations when KDH Corporation closed its doors and ceased functioning as a viable business entity." Plf's Mot. filed Mar. 6, 1987, at 1–2. On November 16, 1987, the State of California, Secretary of State, Corporate Status Unit, suspended KDH Corporation's corporate status. The case was suspended again at plaintiff's request from December 11, 1987, through February 1, 1988, in order to enable plaintiff's surety to determine whether to continue this suit. On November 3, 1989, the State of California, Secretary of State, Franchise Tax Board, suspended KDH Corporation for failure to pay its corporate taxes in 1988 and 1989.

## DISCUSSION

By its motion to dismiss, defendant asserts that the Claims Court lacks jurisdiction to entertain this action, citing plaintiff's want of the capacity to maintain the action and its failure to certify the claim properly. In evaluating a RUSCC 12(b)(1) motion, the court must accept as true any allegations of fact asserted by the non-movant. *Scheur v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, plaintiff must establish jurisdiction. *Reynolds v. Army & Air*

---

**2.** The Contractor's License for KDH Corporation and Richard Bates, Joint Venture, issued by the state of California, Contractors Licensing Board, expired on October 31, 1985. No current license exists for this contractor.

*Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir.1988).

### 1. *Capacity*

█ In order to establish jurisdiction in the Claims Court, a claimant must plead and prove that it has the capacity to file suit. *Mather Constr. Co. v. United States*, 201 Ct.Cl. 219, 225, 475 F.2d 1152, 1155 (1973) (per curiam) (motion to dismiss granted where corporate plaintiffs lacked capacity to sue under California law). In this case defendant challenges plaintiff's capacity to maintain the suit as a joint venture and plaintiff's failure after co-venturer Bates died to substitute a proper party with the right to continue the action.

█ RUSCC 17(b) sets forth the rule governing the capacity of a party to sue:

The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.

Therefore, the laws of the state of incorporation, *i.e.*, California, must be applied to determine the capacity of the joint venture to sue.

█ It would appear that, under the laws of the State of California, the failure of KDH Corporation to pay its taxes would preclude its filing suit in this or any other court. Cal.Rev. & Tax.Code § 23301 (West Supp.1977).

Section 23301 in the 1990 supplement, provides:

Except for the purposes of filing an application for exempt status or amending the articles of incorporation as necessary either to perfect that application or to set forth a new name, the corporate powers, rights and privileges of a domestic taxpayer, may be suspended, and the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state may be forfeited if any of the following conditions occur:

(a) If any tax, penalty, or interest, or any portion thereof, which is due and payable either at the time the return is required to be filed, or on or before the 15th day of the ninth month following the close of the income year, is not paid on or before 6 p.m. on the last day of the 12th month after the close of the income year.

(b) If any tax, penalty, or interest, or any portion thereof, due and payable upon notice and demand from the Franchise Tax Board, or due and payable under Section 25936, is not paid on or before 6 p.m. on the last day of the 11th month following the due date of the tax.

(c) If any liability, or any portion thereof, which is due and payable under Article 5 (commencing with Section 18681) of Chapter 18 of Part 10, is not paid on or before 6 p.m. on the last day of the 11th month following the date that the tax liability is due and payable.

At the time plaintiff's claims arose and at the time plaintiff filed suit, the corporate status of KDH Corporation was intact. Later, however, on November 3, 1989, the state suspended KDH Corporation for failure to pay taxes. "Capacity ... is not only the power to bring an action, but is also the power to maintain it." *Mather Constr. Co.*, 201 Ct.Cl. at 225, 475 F.2d at 1155 (applying California law). This corporate suspension renders plaintiff "incompetent" to maintain the suit. "[I]ncapacity of a corporation will render it powerless to proceed and therefore may be raised as a defense at any time prior to final judgment." *Id.*

A suspended corporation, however, may obtain a certificate of revivor and thereby regain its corporate status. KDH Corporation obtained a certificate of revivor on January 22, 1990.[3] "A revivor has the effect of restoring all powers, rights and privileges to the suspended corporation. It also validates all acts and transactions that occurred while the corporation was sus-

---

3. The certificate of revivor presumably was obtained in response to defendant's motion to dis- miss filed on December 12, 1989.

pended." Friedman, Cal.Prac.Guide: Corporations ¶ 6, at 572 (TRG 1989) (citing Cal.Rev. & Tax Code § 23305A). The Court of Claims in *Mather* recognized reinstatement by revivor.[4] Consequently, KDH Corporation had the corporate capacity to bring this suit at the time of filing and has the capacity to maintain the suit through the certificate of revivor.

■ Co-venturer Bates died in 1987. Defendant faults plaintiff for having failed to make the requisite substitution for Mr. Bates. RUSCC 25(a)(1) provides:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party, and shall be served as provided in Rule 5. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Plaintiff contends that California treats a joint venture as a partnership, *see In re Gotfried*, 45 F.Supp. 939 (C.D.Cal.1942), and that one partner may prosecute an action on behalf of the partnership in order to wind up the affairs of the joint venture. *Braun v. Woollacott*, 129 Cal. 107, 61 P. 801, 802–03 (1900); *Bank of California v. Connelly*, 36 Cal.App.3d 350, 371–72, 111 Cal.Rptr. 468, 482–83 (1973). Conceding that a joint venture is most like a partnership, defendant argues that a joint venture is not immune from federal contract law. Defendant cites two Claims Court cases that would not permit KDH Corporation alone to continue this suit on behalf of the joint venture. "[T]he universal rule is that an individual co-venturer may not sue in his own name to enforce a liability owed the joint venture." *Pine Prods. Corp. v. United States*, 15 Cl.Ct. 11, 14 (1988) (citing cases); *accord Ward–Schmid Co. v. United States*, 18 Cl.Ct. 572, 575 (1989). This rule prevents exposure of the Government to multiple lawsuits.

■ In *Pine Products* the Claims Court held that parties to a joint venture were required to plead a claim on behalf of the joint venture. *Pine Products* involved timber payments payable to the United States by the joint venture. The court determined that the redress issue "belongs to the joint venture, not to plaintiff in its individual capacity." 15 Cl.Ct. at 14. Thus, an individual co-venturer may not sue in his own name to enforce a liability owed the joint venture. *Id.* (citing cases). This court agrees with the holding of *Pine Products* and applies it.

Although plaintiff did not move within the stipulated time to substitute a proper party for deceased co-venturer Bates, plaintiff maintains that Rule 25(a)(1) is inapplicable since the joint venture is winding up its business. However, plaintiff fails to supply any evidence that it has complied with the requirements of Cal.Corp.Code § 15035.5 (West 1977), that a notice of dissolution be published. That statute provides, in pertinent part:

Whenever a partnership is dissolved, a notice of the dissolution shall be published at least once in a newspaper of general circulation in the place, or in each place if more than one, at which the partnership business was regularly carried on, and an affidavit showing the publication of such notice shall be filed with the county clerk within thirty days after such publication.[5]

Incident to argument the court ordered plaintiff to submit a copy of the joint venture agreement, which could illuminate how dissolution is to occur. However, plaintiff's counsel advised during argument that no written joint venture agreement

---

**4.** Although no certificate of revivor was placed in evidence in *Mather*, the court suggested that, had it been, the corporation would have been viewed by the court as reinstated with all rights and privileges intact.

**5.** While this statute, cited by defendant, references only partnerships, the parties agree that California law treats a joint venture as a partnership for purposes of determining capacity. *See In re Gotfried*, 45 F.Supp. 939.

exists. Nor did plaintiff offer evidence that KDH Corporation has the authorization to maintain an action on behalf of co-venturer Bates. Failing the timely substitution for co-venturer Bates, plaintiff lacks the capacity to continue this lawsuit.

### 2. *Certification*

The CDA specifically requires that "the contractor" shall certify all claims of more than $50,000.00. 41 U.S.C. § 605(c)(1). The Administrator of Federal Procurement Policy issued an implementing regulation, 48 U.S.C. (FAR) § 33.207(c)(2) (1990), permitting "(i) [a] senior company official in charge at the contractor's plant or location involved; or (ii) [a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs" to execute the certification.

Although not expressly addressed in the statute, case law establishes that submitting a properly certified claim pursuant to 41 U.S.C. § 605(c)(1) is a jurisdictional prerequisite. *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985); *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1339 (Fed.Cir.1983); *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 16, 673 F.2d 352, 355 (1982). Section 605(c)(1) has been applied exactingly: Failure properly to certify a claim results in dismissal. *Ball, Ball & Brosamer, Inc. and Ball & Brosamer (JV) v. United States,* 878 F.2d 1426, 1428 (Fed.Cir.1989) (citing cases). Proper certification "is the *sine qua non* of a claim ... for more than $50,000." *Essex Electro Engr's, Inc. v. United States,* 702 F.2d 998, 1004 (Fed.Cir. 1983). The requirement "is not a mere technicality to be disregarded at the whim of a contractor, but is an unequivocal prerequisite for a ... claim being considered under the ... [CDA]." *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1384 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).

As stated by Congress, the purpose of the certification requirement is to "'discourag[e] the submission of unwarranted contractor claims.'" *Paul E. Lehman,* 230 Ct.Cl. at 14, 673 F.2d at 354 (quoting S.Rep. No. 1118, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5239). The certification represents that the claim accurately reflects the contractor's estimated value of the case. *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 407, 677 F.2d 850, 852, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). By holding a contractor liable for misstatements, miscalculations, and any other unsupported portions of the claim in its certification under 41 U.S.C. § 604, the certification requirement reduces frivolous and unwarranted claims. *Ball, Ball & Brosamer,* 878 F.2d at 1429.

Interest on an ultimately successful claim begins accruing upon the contracting officer's receipt of a properly certified claim. 41 U.S.C. § 611. Because no interest can accrue on an uncertified claim, *Fidelity Constr. Co. v. United States,* 700 F.2d at 1384, the failure properly to certify a claim will cause the contractor to forfeit the right to any interest that may have accrued.

Ascertaining whether a claim has been certified by the appropriate official who can bind the contractor has spawned litigation. Before FAR § 33.307(c)(2) became effective, the Claims Court used as a test standard language included in every contract's "Claims and Disputes" clause that reiterated the CDA's certification requirements:

> If the contractor is not an individual the certification shall be executed by a senior company official in charge at the contractor's plant or location involved; or by an officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

*Romala Corp. v. United States,* 12 Cl.Ct. 411, 413 (1987). In *Romala* no evidence substantiated that an attorney who attempted to certify the claim was either a senior company official or an individual acting in a supervisory capacity for the contractor's affairs. 12 Cl.Ct. at 413. The court rejected the certification even though the corporation submitted an affidavit stating that it authorized the attorney to certify the claim on its behalf. *Id.* at 412. From this case emerged the notion that an

individual should be authorized to certify a claim.

This court held in *Donald M. Drake Co. v. United States*, 12 Cl.Ct. 518 (1987), that the person who served as Project Manager on site properly could not certify the claim because he was not a senior company official in charge at the location. Moreover, another corporate officer was responsible for approving the claim. The Project Manager was not a senior company official, an officer, nor general partner of the firm. 12 Cl.Ct. at 520. This case also emphasized the lack of authority to certify.

The concept of authority to certify again arose in *Todd Bldg. Co. v. United States*, 13 Cl.Ct. 587 (1987). In finding the General Manager's certification proper, the court noted that the General Manager had both general supervisory authority over the contractor's affairs and full authority to bind the contractor. 13 Cl.Ct. at 589. A previously submitted claim, signed by the contractor's Executive Assistant, was denied for improper certification. The General Manager photocopied that claim and placed his signature directly beneath the certification clause. The court held that the General Manager's signature properly certified the claim. *Id.* at 588.

In 1989 the Federal Circuit issued its decision in *Ball, Ball & Brosamer* strictly construing FAR § 33.207(c)(2). This strict construction test serves, at least in part, as the yardstick for all subsequent corporate contractor certification cases in the Claims Court and the Federal Circuit. The court rejected the contractor's interpretation of the regulation to cover a company official who was authorized to submit and certify a claim on behalf of the company, explaining that the Chief Cost Engineer's authority to sign and certify claims on behalf of the corporation as declared by the corporate president "does not establish that ... [the Chief Cost Engineer] comes within either of the two categories of persons the regulation authorizes...." 878 F.2d at 1428.

*Al Johnson Construction Co. v. United States*, 19 Cl.Ct. 732 (1990), nonetheless resuscitated the issue of authority as delegated by the corporation, not the regula-tion. The Claims Court held that the Project Manager was not a senior company official in charge of the project because his authority was limited to change orders of under $50,000.00 and he did not otherwise act in an official capacity. 19 Cl.Ct. at 735.

Applying the Federal Circuit's interpretation of the regulation in *Ball*, the Claims Court found the officer of a parent company to be an improper person to certify the subsidiary's claim. *National Sur. Corp. v. United States*, 20 Cl.Ct. 407 (1990). Because the subsidiary company maintained a recognizably separate and distinct corporate identity, the certification by the parent corporation employee was ineffective on behalf of the subsidiary under the plain language of the statute. 20 Cl.Ct. at 410.

*Westech Corp. v. United States*, 20 Cl.Ct. 745 (1990), also applied the strict construction of FAR § 33.207(c)(2) in finding the on-site Project Manager, a former employee (at the time of certification), an improper person to certify the contractor's claim. The certifying official in *Westech* was not an employee of the contractor (Fireman's Fund), but, rather, an employee of a consultant retained by Fireman's Fund. 20 Cl.Ct. at 752. Plaintiff asserted that the Project Manager was authorized to certify the claim by acting as an agent of Westech. Because the Project Manager was not subject to control by Westech, and Westech was not responsible for his assertions, the court rejected the agency theory of ratification. The court also rejected the corporate President's attempt to ratify the Project Manager's authority to certify the claim for Westech as a "former senior on-site supervisor." This ratification occurred after the suit was filed and over five years after attempted certification of the claim. *Id.* at 752 n. 6.

*Sun Cal, Inc. v. United States*, 21 Cl.Ct. 31 (1990), more pragmatically applied FAR § 33.207(c)(2). Duffy, the Vice President and Chief Financial Officer of Sun Cal, Inc., certified the claim for the contractor SCI–9 (a Texas limited partnership). Although Sun Cal was the contractor's (SCI–9's) general partner, technically Duffy was not an employee of SCI–9, the contractor.

Under Texas law a limited partnership acts only through its general partner. The court concluded that Duffy was the company official responsible for completing the contract, the senior company official in charge at the construction site (since he spent sufficient time at the site in the court's view to qualify), and the officer or general partner of contractor having overall responsibility for the conduct of the contractor's affairs. 21 Cl.Ct. at 33–34. The court rejected defendant's assertion that Duffy was required to hold complete responsibility over Sun Cal in order properly to certify the claim. *Id.* at 34.

Despite *Ball*'s rejection of an authority test, several Claims Court opinions continue to utilize this two-part test for determining an official's ability to certify properly a corporate contractor's claim. Most notable is *Triax Co. v. United States,* 20 Cl.Ct. 507, 512 (1990), which expressly derives its rule from *Ball, Drake, Romala,* and *Al Johnson Construction.* According to Chief Judge Smith in *Triax,* the propriety of a certification depends on 1) whether the individual certifying the claim on behalf of a corporate contractor satisfies the requirements of 48 C.F.R. § 33.207(c)(2) (1988), and 2) whether the individual has authority to bind the contractor. *See also Al Johnson,* 19 Cl.Ct. at 738 (holding invalid a certification executed by an individual lacking authority to bind the contractor and failing to satisfy the requirements of 48 C.F.R. § 33.207(c)(2)). The court concluded that demobilization of the work force, such as that in *Westech,* does not automatically preclude proper certification by a senior, on-site official under FAR § 33.207(c)(2). *Triax* held that 1) the Secretary, who was also the company's attorney; and 2) the Financial Vice–President were both authorized by the regulation to certify such claims. 20 Cl.Ct. at 508. The authority of the individual employees was not in dispute since the court presumed that they possessed overall responsibility for the conduct of the contractor's affairs, as evi-

denced by Triax's *prima facie* showing that the individuals were general officers of the company under state law and from defendant's failure to show the individuals' lacked such responsibility. *Id.* at 512.[6]

Although defendant argued in *Western Empire Constructors, Inc. v. United States,* 20 Cl.Ct. 668 (1990), that the Project Manager was not an equity owner, director, or officer qualifying as a "contractor" under the terms of 41 U.S.C. § 605(c)(1), the court held that the Project Manager was a senior company official in charge of the contractor's plant, sufficient to comply with FAR and the Disputes clause of the contract. Contrary to *Al Johnson,* which declined to give weight to the contractor's after-the-fact description of the individual's duties, the *Western Empire* court gave credit to and relied on plaintiff's response to defendant's interrogatories, stating that not only was the individual in question the "Project Manager and a senior company official in charge of the VA Medical Center Project," but also that the Project Manager was "authorized to act on behalf of WECI [Western Empire Constructors, Inc.] in all matters relating to the Project, including the authority to sign on behalf of the company documents necessary to convey cost and scheduling impact information for changes in the work to the Veterans Administration." *Western Empire,* 20 Cl.Ct. at 671 n. 2.

*Manning Elec. & Repair Co., Inc. and Safeco Ins. Co. of America v. United States,* 22 Cl.Ct. 240 (1991), applied the same test as that used by *Drake* and *Al Johnson* to determine that Project Manager Anderson was a senior company official at the construction site, as required by the regulation. The court found that the Project Manager in this case also had full authority to bind the company without prior approval. 22 Cl.Ct. at 244. The Project Manager in *Drake* had to receive prior approval from the Vice President before certifying any claim; in *Al Johnson* a writ-

---

**6.** Plaintiff in *Triax* argued that the "overall responsibility" clause modifies "general partner" but not "officer." The court noted the plausibility of this interpretation of the regulation, but

indicated such a reading was not necessary to sustain plaintiff's position. *Triax,* 20 Cl.Ct. at 512 n. 4.

ten letter of authorization specifically prohibited the Project Manager from certifying any change order over $50,000.00. In contrast, the Project Manager in *Manning* supervised approximately 20 different projects and exercised general supervisory powers and responsibilities. *Id.*

Recently the Federal Circuit again strictly applied FAR § 33.207(c)(2) in *United States v. Grumman Aerospace Corp.*, 927 F.2d 575 (Fed.Cir.1991). The court held that Paladino, the Senior Vice President and Treasurer of Grumman ("GAC"), was not the proper corporate official to certify claims, contrary to the Armed Services Board of Contract Appeal's ("ASBCA's") findings of fact. The board found 1) that "[a]t the time of the certification, Paladino's functions included overall responsibility for GAC's financial affairs; and 2) that "Paladino, who provided the certification, reports directly to the President of GAC." 927 F.2d at 577 (quoting *Grumman*, 90–1 B.C.A. (CCH) ¶ 22,417, at 112,601). The Federal Circuit concluded that Paladino fit neither category of the FAR provision. As a senior company official, Paladino was not "in charge" because he reported to an official who ultimately decided whether to present the claim, and GAC did not establish Paladino's physical presence at the "plant or location involved." Paladino's overall responsibility for the company's financial affairs did not fulfill regulation requirements since his responsibility involved only financial aspects. *Id.* at 580.

After *Grumman* the law on certification is that the certifying official must be a senior company official with primary responsibility for the execution of the contract and physically present at the location, or a chief executive officer, or one of equivalent status, as the official with overall responsibility for the contractor's conduct of affairs. In the context of joint ventures involving one or more business entities, this standard cannot be applied literally, since a joint venture may consist of one or more business entities. The joint venture usually acts by one of its co-venturers and may deputize an official of one co-venturer to manage the project or affairs of the

venture. The concept of authority thus reenters the arena.

■ In this case defendant faults plaintiff's certification because it was not in the name of the joint venture and was made by Mr. Bates as President of KDH Corporation. Consequently, according to defendant, Mr. Bates is not bound. Plaintiff rejoins that the claim letter established that the claim was submitted by and on behalf of the joint venture and that co-venturer Bates' signature as President of KDH Corporation "does not defeat the fact that the claim was filed on behalf of the joint venture...." Plf's Br. filed Jan. 25, 1990, at 12. Plaintiff queries, "Who but Mr. Bates, as President of KDH CORPORATION and as co-venturer is subject to financial liability[?] ..." *Id.* at 13. Defendant, however, correctly frames the issue as whether KDH Corporation was authorized to certify the claim on behalf of the joint venture, not whether Mr. Bates had authority as President of KDH Corporation to sign on behalf of the joint venture.

In resolving this issue defendant does not challenge the propriety of Mr. Bates' signature. Indeed, FAR § 33.207(c)(2) stipulates that a partner can sign for a contractor. Nor does defendant question that Mr. Bates could bind KDH Corporation or the joint venture if KDH Corporation were authorized to bind the joint venture to a certification. When a joint venture is the contractor, one inquiry is whether the claim was certified properly on behalf of the contractor joint venture; the other is whether the individual certifying the claim is the proper party to do so. The former inquiry is crucial in this case.

■ California case law instructs that absent a special agreement, one co-venturer does not have the right to bind the other co-venturer. *Nelson, Inc. v. Tarman*, 163 Cal.App.2d 714, 726, 329 P.2d 953, 959 (1958). The co-venturers, however, may agree to grant authority to one or more to bind the whole. *Stilwell v. Trutanich*, 178 Cal.App.2d 614, 3 Cal.Rptr. 285, 289 (1960) (citing cases). This authority may be oral or implied from the circumstances. *Foote*

*v. Posey,* 164 Cal.App.2d 210, 217, 330 P.2d 651, 655 (1958).

■ Unlike the issue of capacity where state law is determinative, the role of state law in resolving certification questions is unclear. California law, however, is consistent with federal law concerning general principles. A joint venture and its individual members are "separate and distinct legal entities and are not the same 'contractor.'" *S–M–M–S v. United States,* 1 Cl.Ct. 188, 191 (1982); *accord Quality Transport Servs., Inc. v. United States,* 12 Cl.Ct. 276, 283 (1987).[7] In the absence of a special agreement, a co-venturer does not have the right to bind other co-venturers. Nevertheless, the co-venturers may, by agreement, grant authority to one or more of their number to bind the whole. This authority may be oral or implied from the circumstances. *Cox Construction Co. v. United States,* 21 Cl.Ct. 98, 101 (1990).

In *Cox Construction* an oral agreement existed between two individuals, Mr. Cox, president of Cox Construction Co., and Mr. Haehn, President of Haehn Management Co., allowing Mr. Cox to bind the joint venture. This oral agreement was substantiated by an affidavit and a declaration of the two principals. The authorization of Mr. Cox to act on behalf of the joint venture was further supported by the following: (1) the Air Force worked exclusively with Mr. Cox throughout the performance of the contract; (2) all correspondence between the Air Force and the joint venture was directed through Mr. Cox; and (3) change orders and Department of Treasury checks were issued exclusively to Cox Co. Additionally, Messrs. Cox and Haehn were authorized to sign on behalf of the joint venture, as evidenced by the contract award papers. The Claims Court held that Mr. Cox's authority to sign for the joint venture could be implied from the circumstances.

■ Defendant contends that *Cox* was incorrectly decided because the case allows substantial compliance with the certification requirement unless the Government can demonstrate a justifiable fear of multiple litigation. Defendant is correct insofar as the *Cox* court reasoned that the Government would not face multiple litigation if Mr. Cox were allowed to bind the joint venture. The risk of multiple litigation sparks the requirement that a joint venture lacks capacity to sue unless both co-venturers are joined. Moreover, defendant is concerned that the court in *Cox* allowed *post facto* sworn statements of Messrs. Cox and Haehn to establish that Mr. Cox was acting on behalf of the joint venture when he submitted the claim and certification. According to defendant, this approach allows co-venturers to dictate after submitting a claim if they will be bound by the certification. This court considers defendant's concern justified insofar as resort to affidavits is less trustworthy than reliance on contemporaneous evidence to establish authorization by circumstances or course of dealings. The objective of certification is to bind a contractor so as to trigger its liability for a fraudulent claim. *Skelly & Loy v. United States,* 231 Ct.Cl. 370, 376 n. 11, 685 F.2d 414, 418 n. 11 (1982). The contractor should not be permitted to either elude or establish the validity of its certification by new evidence created after the date on which certification was made.

In *The Boeing Co.,* ASBCA No. 36612, 89–1 B.C.A. (CCH) ¶ 21,421, the Armed Services Board of Contract Appeals held that certification by one member of a joint venture was not proper under the CDA. In *Boeing* the co-venturers, Bell Helicopter Textron ("Bell") and Boeing Veritol Co. ("Boeing"), entered into a teaming agreement requiring the co-venturers to approve any actions taken on behalf of the joint venture. No evidence was submitted to establish that the certification had been subjected to the required approval process.

---

7. *See National Surety Corp. v. United States,* 20 Cl.Ct. 407, 410 (1990) (wholly-owned subsidiary, not parent, must be recognized as separate and distinct corporate entity for purposes of contractor certification); *cf. Sun Cal, Inc. v. United States,* 21 Cl.Ct. at 33 (finding that general partner was appropriate entity to submit claim for limited partnership because under applicable state law limited partnership acted only through its general partner).

Moreover, the costs at issue were certified as "Boeing's costs" and the individual who signed the certification clearly did not have the authority to do so on behalf of the joint venture.

After dismissal for defective certification in *Boeing,* the joint venture resubmitted its claim to the contracting officer. The new certification was signed by the president of Boeing with the consent and authorization of the president of Bell, as required by the practice of the two co-venturers under the teaming agreement. *The Boeing Co.,* ASBCA No. 39314, 90–2 B.C.A. (CCH) ¶ 22,769, at 114,292. The contracting officer denied the claim. The Government asserted that the joint venture's certification of its claim was defective on the ground that "[t]he joint venture, acting as a team, and not the presidents of the corporations, must prosecute and certify this claim." *Id.* at 114,292.

The ASBCA held:

In the situation before us, the president of Boeing, in keeping with prior joint venture practices, correctly obtained the consent and authorization of the president of Bell, in certifying the claim to the contracting officer. Once that consent and authorization was obtained, the president of Boeing became the duly authorized individual to certify the claim for the joint venture contractor.

*Id.* (citing *Eastern Car Constr. Co.,* ASBCA No. 30955, 86–2 B.C.A. (CCH) ¶ 18,909).

The Federal Circuit in *United States v. General Electric Corp.,* 727 F.2d 1567, 1569 (Fed.Cir.1984), espoused the concept that substantial compliance with certification requirements may preclude dismissal of a claim. As defendant points out, however, the case involved language constituting an oath that the claim was valid, not the signatory to the certification. Substantial compliance will not suffice in respect of the requirement that the contractor certify the claim. If co-venturer KDH Corporation is not an authorized signatory, co-venturer Bates may not be bound.

The cases instruct that a co-venturer may certify a claim for the joint venture when either expressly or impliedly authorized. In this case, both the contract and the bilateral contract modifications (when not signed by plaintiff's Project Manager for the contractor "KDH Corporation and Richard W. Bates, (JV)") were signed by Richard W. Bates, President, on behalf of the contractor, KDH Corporation and Richard W. Bates, Joint Venture. Compare how (1) the contract was signed:

Contractor

KDH Corp. & Richard W. Bates JV

By *Richard W. Bates*
　*President*

and (2) how the contract modifications were issued:

Name of Contractor

KDH Corporation & Richard W. Bates (J.V.)

*Richard W. Bates*

Name and Title of Signer

Richard Bates, Pres. or President

with (3) the designation of the contractor on certification:

KDH Corporation

By: *Richard W. Bates, President*

■ Indisputably, KDH Corporation did not have express authority to certify the claim on behalf of plaintiff. Implied authority may be inferred from the parties' agreements or course of dealings with each other or the Navy. Although Mr. Bates often signed contract documents in the name of and on behalf of the joint venture, he signed as President of KDH Corporation. "President" can have no other referent.

Plaintiff relies upon a California statute for the proposition that Mr. Bates, executing the certification at issue in his capacity as president of KDH Corporation, had the authority legally to bind the joint venture to an instrument even if the instrument was not in the name of the joint venture. Cal.Corp.Code § 15009(1) (West Supp.1991), provides:

Partner As Agent of Partnership; Authority

(1) Every partner is an agent in the partnership for the purpose of its busi-

ness, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership for which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority. . . .

Although the partnership statute determines the capacity of joint ventures to sue, the California Court of Appeal in *Smalley v. Baker*, 262 Cal.App.2d 824, 69 Cal.Rptr. 521 (1968), distinguished between section 15009 as providing the law for partnership authority and case law for joint venture authority. The court stated in dictum, however, that if the parties had been a joint venture, one of them as a matter of law had the authority to bind both parties.

Plaintiff has shown that California case law would recognize a valid certification on the joint venture's behalf by KDH Corporation because the claims letter evinces that the joint venture is the claimant. *See Sunset Milling & Grain Co. v. Anderson*, 39 Cal.2d 773, 249 P.2d 24 (1952) (no particular form of signature required to bind principal as long as it appeared from instrument itself that such result was intended). Nonetheless, the law on CDA claims formulated in the Federal Circuit focuses not on state law, but, rather, on what Congress intended in drafting the CDA as it did. In fashioning predictable rules for the government contractor to follow in presenting its claim, an uncertainty has emerged between decrying the "minutia" of letter writing in *Dawco*, at 880, on the one hand, and attempting to incorporate the pragmatic operations of corporations in *Grumman* into a regulation that does not allow for the manner in which business entities structure their operations, on the other.

 Because California law is not dispositive, the court examines the facts in light of federal procurement law. Defendant insists that the certification itself must reiterate the name of the contractor. Section 605(c)(1) of the CDA requires that "the contractor shall certify" the claim. Since FAR § 33.207(c)(2) purports to designate those officials who may act for the contractor, the statute has been interpreted authoritatively to allow individuals other than the contractor to sign. When a joint venture is involved, one co-venturer may certify for the joint venture if authorized expressly or impliedly. That the joint venture is not identified by name in the certification, having been named in the claim letter as "the contractor" and referred to in the body of the certification as "the contractor," is not fatal.

The claim letter as a whole—reasonably, but conservatively, construed—is the claim of the joint venture. The claim letter identifies the joint venture as the contractor; and the certification, which is part of the letter, states that the amount claimed "accurately reflects the contract adjustment for which the Contractor believes the Government is liable." The certification was not in the name of KDH Corporation; it was in the name of the joint venture, but signed by KDH Corporation per Mr. Bates as President.

Never before in the dealings on this contract had KDH Corporation signed for the joint venture. Yet, plaintiff substantiated that Mr. Bates signing as President of KDH Corporation impliedly through agreements or course of dealings was authorized to bind the joint venture. Mr. Bates had authority to bind KDH Corporation (which defendant concedes). By signing as President in the past, Mr. Bates was not signing in his individual capacity; he was signing for KDH Corporation. The corporation had implied authority to bind the joint venture. Therefore, both co-venturers KDH Corporation and Mr. Bates were bound by the certification.

### CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted as to plaintiff's lack of capacity and is otherwise denied. The Clerk of the Court shall dismiss the complaint for want of subject matter jurisdiction. This type of dismissal operates without prejudice.

IT IS SO ORDERED.

No costs.

