**KIEWIT/TULSA–HOUSTON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 430–88C.**

United States Claims Court.

Jan. 17, 1992.

Allan L. Overcash, Lincoln, Neb., for plaintiff. Edward H. Tricker and Kerry L. Kester, of counsel.

Bryant G. Snee, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen, Asst. Director Terrence S. Hartman, and John P. Sholar, for defendant. I. Avrum Fingeret and Thomas West, Office of the General Counsel, U.S. Dept. of Energy, of counsel.

## OPINION

LYDON, Senior Judge:

Counts I, II, III, V, VII, VIII and IX of Kiewit/Tulsa–Houston, A Joint Venture's complaint are before the court on defendant's Motion to Dismiss.[1] The issue for decision is whether plaintiff properly certified its complaint pursuant to section 605(c)(1) of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et seq.* Plaintiff opposes defendant's Motion to Dismiss. After consideration of the parties submissions and after oral argument held December 20, 1991, the court grants defendant's Motion to Dismiss.

---

1. Counts VI and X have been voluntarily withdrawn. Count IV is not included in this motion to dismiss.

### FACTS

Kiewit Industrial Co., a Nebraska corporation, and Tulsa–Houston, Inc., a Texas corporation, entered into an agreement entitled "JOINT VENTURE AGREEMENT"[2] ("the Agreement") on June 20, 1986. The parties had agreed to bid on and attempt to obtain a contract with the United States Government Department of Energy ("Owner") for the construction of a crude oil pipeline. By the terms of the Agreement, the bid and contract would be entered into in the name of "Kiewit/Tulsa–Houston, A Joint Venture" ("KTH"). The Agreement provides that, "[t]his Agreement shall extend only to the submission of a joint bid and the performance of the Construction Contract, including all additions thereto and modifications thereof and shall have no other purpose."

At all times relevant to the joint venture agreement and the dispute now before the court, Mr. Charles F. James was President of Tulsa–Houston, Inc. Mr. Gordon Nordlund served as corporate Vice President for Kiewit Industrial Co., in addition to his position as District Manager for the Power and Process District, an autonomous business unit of Kiewit Industrial Co. The joint venture for the bidding and construction of the oil pipeline is a project of the Power and Process District. As District Manager, Mr. Nordlund is the highest ranking official who devotes full time to the operation of the district and has ultimate responsibility for all aspects of the district. He reports to Mr. Keene, President and Division Manager of Kiewit Industrial Co. All District Managers report to Mr. Keene as Division Manager.

The joint venture agreement describes the structure of the joint venture. Section 3.0, *Percentage of Participation*, defines the interest of each party in the profits, losses and liabilities of the joint venture. Kiewit Industrial Co. is the majority party with 51%, and Tulsa–Houston, Inc. is the minority party with 49% participation. Section 4.0 of the agreement establishes that "the management of the joint venture shall be conducted pursuant to policy established by the Parties acting through a 'Policy Committee'." Each Party has a voice in the Policy Committee equal to its percentage of participation in the joint venture. Kiewit Industrial Co. has 51 votes. Its designated representative to the Policy Committee is Gordon Nordlund. Tulsa–Houston, Inc. has 49 votes and designated Charles F. James as its representative. According to the Agreement, the policy for the management of the joint venture is determined by majority vote of the Policy Committee. "Majority vote" is defined in the Agreement as "greater than one-half of the authorized votes."

The powers of the Policy Committee are delineated in Section 4.5, which provides, *inter alia:*

4.5. The Policy Committee shall have the following powers:

a) To determine the time and place of holding its meetings and to establish procedures for conducting Committee affairs.

b) To determine and act upon the various matters, expressly or impliedly contained in other sections of this Agreement, which require decision by the Policy Committee.

c) To determine and act upon any other matters of joint interest to or requiring prompt action by, the joint venture.

. . . .

f) To consider all claims and disputes of any kind between the joint venture and the Owner, subcontractors and/or third Parties and to authorize negotiation, arbitration, litigation and/or any other process for their resolution and to authorize the settlement thereof.

The Policy Committee is authorized by section 4.7 to conduct its meetings by telephonic communication between all Party

---

**2.** A "joint venture" is generally an association of persons by way of contract to engage in and carry out a single business adventure for joint profit, combining their efforts, property, money, skill and knowledge without creating a partnership or a corporation. *Lentz v. United States,* 171 Ct.Cl. 537, 546, 346 F.2d 570, 575 (1965).

representatives where circumstances warrant.

Section 5.0 is entitled *Delegation of Authority.* It provides:

5.1. Kiewit Industrial Co. is hereby designated as the Managing Party, subject, however, to the superior authority and control of the Policy Committee. The Managing Party shall appoint the General Manager through whom the Managing Party shall have direct charge and supervision of all matters necessary to and connected with the performance of the Construction Contract, except as otherwise provided herein.

5.2. Authority to act for and bind the Parties in connection with all or any part of the performance of the Construction Contract may from time to time be delegated in writing by unanimous vote of all the parties to any of the Parties and/or to any individual or individuals.

5.3. Any delegation of authority to any Party or individual or individuals may be revoked by majority vote of all of the Parties; provided, however, that if the authority of the individual serving as General Manager is revoked, the Managing Party shall have the right and obligation to appoint another individual to serve in that capacity who is acceptable to the Parties hereto.

5.4. No Party shall have authority to act for or bind the other Parties except in connection with the performance and administration of the Construction Contract, and then only pursuant to authority delegated according to the provisions of this Section.

Section 12.5 of the agreement provides, "This Agreement constitutes the entire agreement between the Parties, and is subject to no other oral or written proposals, agreements or understandings whatsoever, and can only be supplemented or amended by a written document subscribed by the Parties."

In addition to the joint venture agreement, the Parties executed a Power of Attorney on July 1, 1986, designating Gordon Nordlund of Kiewit Industrial Co. and Charles F. James of Tulsa–Houston, Inc. as their attorneys-in-fact. The document specifically enumerates nine areas in which the attorneys-in-fact are authorized to bind the Parties. The power to certify claims is not expressly included in the list. The Power of Attorney stated that it would "remain in full force and effect for a period of one year from its effective date or until revoked in writing, whichever first occurs...."

On that same date, July 1, 1986, the Strategic Petroleum Reserve Project Office of the Department of Energy awarded Contract No. DE–AC96–86PO13055 to KTH for the construction of a 47–mile crude oil pipeline along the Gulf Coast of Texas near Houston, Texas. Under the contract, the government was required to supply the steel pipe and certain other materials to construct the pipeline. KTH was required to supply all other materials and all labor and equipment to construct the pipeline, connect it to existing oil facilities and test the pipeline. The pipeline was to be delivered December 15, 1986, for a total contract price of $23.5 million.

The plaintiff submitted several claims flowing from the performance of the contract to the Contracting Officer for final decision. These claims were submitted on stationery bearing the letterhead of "Kiewit/Tulsa–Houston, A Joint Venture." The first claim, which corresponds to Counts I, III, V, VI, VII and VIII of plaintiff's complaint, was submitted on June 3, 1987, for equitable adjustments in the amount of $2,384,825.00. The claim letter was signed by Mr. Gordon Nordlund as "District Manager" under the closing salutation "KIEWIT/TULSA–HOUSTON A JOINT VENTURE." The next claim, which corresponds to Counts II and VIII of plaintiff's complaint, was submitted on July 15, 1987, for equitable adjustments in the amount of $87,102.00. This claim was signed by Mr. Paul Languille, as "Project Manager," under the closing salutation "KIEWIT/TULSA–HOUSTON A JOINT VENTURE." The final claim, which corresponds to Count IX of plaintiff's complaint, was sub-

mitted on July 31, 1987, for an equitable adjustment in the amount of $6,816,368.00. This claim was signed by Mr. Gordon Nordlund, as "Vice President," under the closing salutation "KIEWIT/TULSA–HOUSTON A JOINT VENTURE."

For each claim, a certification was attached which states:

> This is to certify that this claim is submitted in good faith; that, to the best of my knowledge and belief, the cost or pricing data (as defined in Section 15.801 of the Federal Acquisition Regulation (FAR) and required under FAR Subsection 15.804.2) submitted, either actually or by specific identification in writing, to the contracting officer in support of the Kiewit/Tulsa–Houston claim addressed in K/T–H Letter [attached] dated [the appropriate date] in the amount of [the claim] is accurate, complete, and current as of [the appropriate date]; and that the amount requested accurately reflects the contract adjustment for which the Contractor believes the government's liable.

The certification for each of these claims was signed by Mr. Gordon Nordlund, as "Vice President." The first two certifications bore the firm name of "Kiewit Industrial Company," and the certification for the final claim identified the firm name as "KIEWIT/TULSA–HOUSTON AJV."

The Contracting Officer issued final decisions denying all claims. The plaintiff brought suit in this court on July 21, 1988, and filed an amended complaint in this matter on July 9, 1990.[3] The defendant filed this motion to dismiss on November 1, 1991. The defendant counterclaimed and entered a Special Plea in Fraud on November 8, 1991.

## DISCUSSION

### A. CDA Certification Requirements

The parties agree that this case is governed by the Contracts Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et seq.* Ac-

cording to section 605(c)(1), the contractor must certify each claim over $50,000:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1).

■ The certification requirement contained in § 605(c)(1) is implemented by the Federal Acquisition Regulations (FAR), 48 C.F.R. § 33.207(c)(2). Where the contractor is not an individual, as in the case at bar, the regulations provide:

> (2) If the contractor is not an individual, the certification shall be executed by—
>
> (i) A senior company official in charge at the contractor's plant or location involved; or
>
> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

48 C.F.R. (FAR) § 33.207(c)(2). In addition to the status requirements of the FAR, the certifier must also have the authority to bind the contractor. *See Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426, 1428 (Fed.Cir.1989); *Universal Coatings/Won Ill Co. v. United States*, 24 Cl. Ct. 241, 244 (1991); *KDH Corp. v. United States*, 23 Cl.Ct. 34, 41 (1991); *Cox Constr. Co. v. United States*, 21 Cl.Ct. 98, 103 (1990); *Triax Co. v. United States*, 20 Cl. Ct. 507, 511 (1990).

■ Proper certification of a claim is a jurisdictional prerequisite to an action brought by a contractor in this court. *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 579 (Fed.Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991). The Federal Circuit explained in *Grumman* that "Congress wanted to hold the contractor personally liable, and it considered the best way

---

**3.** The amended complaint, *inter alia,* specifically withdrew counts VI and X of plaintiff's complaint.

to do this would be to require contractors to personally certify their claims." *Grumman*, 927 F.2d at 579 (quoting *Ball, Ball and Brosamer*, 878 F.2d at 1429). "[C]ertification plays a serious role in the statutory scheme because it triggers a contractor's potential liability for a fraudulent claim under section 604 of the [CDA]. It is also designed to discourage the submission of unwarranted contractor claims and to encourage settlement." *Skelly & Loy v. United States*, 231 Ct.Cl. 370, 376 n. 11, 685 F.2d 414, 418 n. 11 (1982); *see also Grumman*, 927 F.2d at 579; *Ball, Ball and Brosamer*, 878 F.2d at 1429. The court notes that "[a] charge of fraud must be substantiated by clear and convincing proof rebutting every presumption of honesty and fair dealing." *Loesch v. United States*, 645 F.2d 905, 921, 227 Ct.Cl. 34 (1981); *See Dubois Constr. Corp. v. United States*, 120 Ct.Cl. 139, 175, 98 F.Supp. 590 (1951); *O'Brien Gear and Mach. Co. v. United States*, 591 F.2d 666, 672, 219 Ct.Cl. 187 (1979); *Colorado State Bank v. United States*, 18 Cl.Ct. 611, 629 (1989). "[F]raud will not be presumed, and must rest on something more substantial than suspicion, speculation, or a hint of fraud." *Loesch*, 645 F.2d at 921. *See Hageny v. United States*, 570 F.2d 924, 933, 215 Ct.Cl. 412, 428 (1978).

## B. The Certifications

The defendant argues in its Motion to Dismiss that the certifications submitted by the plaintiff are inadequate, and therefore, the court lacks jurisdiction to hear plaintiff's complaint. Defendant argues that the certifications for the first two claims, corresponding to Counts I, II, III, V, VII and VIII of plaintiff's amended complaint, are inadequate on their face because they were certified by only one of the Parties to the joint venture, rather than the joint venture itself. Only the certification for the third claim, corresponding to Count IX of plaintiff's complaint, which identifies the firm as "KIEWIT/TULSA–HOUSTON,

AJV" appears adequate on its face. Furthermore, the defendant argues that Mr. Nordlund, who signed all three certifications, lacked both the requisite status and authority to bind the joint venture. Therefore, defendant argues, all three certifications are insufficient to satisfy the certification requirement of the CDA.

As to the first two certifications, the defendant argues that they are inadequate on their face because by their terms, they explicitly refer to only one of the Parties to the joint venture agreement. The firm name used on the certifications is "Kiewit Industrial Co." The contractor, the entity required to sign the certification, however, is Kiewit/Tulsa Houston, A Joint Venture. Furthermore, the certifications were signed by Mr. Nordlund as "Vice President." Mr. Nordlund was the Vice President of Kiewit Industrial Co. The certifications therefore do not purport to be those of KTH. They are merely the documents of Kiewit Industrial Co.[4] The defendant further states that the certification does not include a statement that Kiewit Industrial Co. has the authority to bind or certify the claim for Tulsa/Houston, Inc. with respect to claims submitted pursuant to the CDA.

The court is not convinced by defendant's argument. The plaintiff's certifications are sufficient to establish a *prima facie* case for jurisdiction. Generally, "the party invoking the jurisdiction of a federal court bears the burden of proving the facts necessary to establish jurisdiction." *Triax Co.*, 20 Cl.Ct. at 511. The burden shifts to the defendant to show that jurisdiction is not proper only after the plaintiff has made a *prima facie* showing of the facts necessary to establish jurisdiction. *Id.*

There is no authority which requires the contractor to certify the claims in any particular form, as long as all the elements of the certification are met. The question is "whether the claim with its attachments

4. An individual co-venturer may not sue in his own name to enforce a liability owed the joint venture. *See KDH Corp. v. United States*, 23 Cl.Ct. 34, 38 (1991); *Pine Products Corp. v. United States*, 15 Cl.Ct. 11, 14 (1988). This rule prevents exposure of the government to multiple lawsuits. *Id.*

sufficiently references the joint venture." *Cox Constr. Co.*, 21 Cl.Ct. at 102. The certifications in the case at bar were clearly submitted on behalf of KTH, not merely Kiewit Industrial Co. The certifications were attached to claims submitted on KTH letterhead. The claims relate to contract performance by KTH, not only Kiewit Industrial Co., as one Party to the joint venture. The certifications themselves specifically refer to "the cost or pricing data . . . submitted . . . to the contracting officer in support of the Kiewit/Tulsa–Houston claim addressed in K/T–H Letter [attached]. . . ."

Plaintiff correctly argues that it is not necessary that the certification be signed by the contractor. The court in *KDH Corp.* stated:

> Since FAR § 33.207(c)(2) purports to designate those officials who may act for the contractor, the statute has been interpreted authoritatively to allow individuals other than the contractor to sign. When a joint venture is involved, one co-venturer may certify for the joint venture if authorized expressly or impliedly. That the joint venture is not identified by name in the certification, having been named in the claim letter as "the contractor" and referred to in the body of the certification as "the contractor," is not fatal.

*KDH Corp.*, 23 Cl.Ct. at 45. Furthermore, a corporate official signing a certification presumptively meets the "overall responsibility" prong of the certification requirements. *See, Triax Co. v. United States*, 20 Cl.Ct. at 511 (a claim certified by the person who was secretary of and attorney for a contracting company was valid, presumptively having overall responsibility for the conduct of the company's affairs). Mr. Nordlund's signature on the certifications, under the designation "Vice President" *prima facie* establishes that the certifications were signed by a person meeting the statutory requirements. The burden shifts to the defendant to overcome the presumption that Mr. Nordlund is a proper person to certify the claims. The key issues for the court to decide are whether Kiewit Industrial Co., as one co-venturer, had the express or implied authority to certify the claim for the joint venture, and whether Mr. Nordlund, acting as Kiewit Industrial Co.'s Vice President, had the status to certify the claims.

## C. Kiewit Industrial Co.'s Authority to Certify Claims on Behalf of the Joint Venture

The defendant argues that the authority to certify claims on behalf of the joint venture is withheld from either Party by the terms of the joint venture agreement. Section 5.0 of the Agreement limits the general grant of authority to Mr. Nordlund as Managing Party, preventing him from certifying the claim in reliance on that provision. His authority as Managing Party is subject to the "superior authority and control of the Policy Committee," as stated in section 5.1. Section 5.4 limits the authority of any Party, "to act for or bind the other Parties except in connection with the performance and administration of the Construction Contract, and then only pursuant to authority delegated according to the provisions of this Section." According to the defendant, this means that grants of authority should be strictly construed. The defendant claims that section 5.2 prevents either Party from acting without the express written consent of the other Party. Section 5.2 states that delegations of "[a]uthority to act for and bind the Parties in connection with all or any part of the performance of the construction contract may from time to time be delegated in writing by unanimous vote of all the parties." This prevents Mr. Nordlund from certifying claims, despite his authority as Managing Party, absent evidence of an express grant of authority to do so. As no such evidence has been presented, the defendant argues that the certifications are inadequate because Kiewit Industrial Co., acting through Mr. Nordlund, lacks the authority to bind the joint venture.

The defendant further argues that because section 5.4 limits the authority of either Party to act except as provided by section 5.0, the authority of the Policy Committee to act by majority vote is limited. Section 4.0 can not be construed to

include the authority to certify claims because the list of powers expressly granted to the Policy Committee does not include the power to certify claims. The defendant urges the court to adopt an interpretation of the contract consistent with the general principle that the express mention of one thing implies the exclusion of others.

This principle of exclusion should also be applied, according to the defendant, to the grant of authority contained in the Power of Attorney. The power to certify claims is not among the nine matters listed, implying that the Parties did not delegate that authority to their attorneys-in-fact. As to the Power of Attorney, the defendant argues that even if the authority to certify claims is granted therein, that authority expired on July 1, 1987. It can only be extended by written unanimous consent of the Parties, not by implication. The second two certifications were made after the Power of Attorney expired, so the Parties can not rely on that document as a source of Mr. Nordlund's authority to certify the second two claims.

The plaintiff contends that Mr. Nordlund does have the requisite authority to certify claims, relying on section 5.1 of the joint venture agreement. Plaintiff argues that the authority to certify the claim flows from the powers granted to Kiewit Industrial Co. as Managing Party and therefore to Mr. Nordlund as Kiewit Industrial Co.'s designated representative. As Managing Party, Mr. Nordlund had overall responsibility for the conduct of all KTH affairs. This includes by implication the authority to certify claims. No further grant of authority was necessary under section 5.2 because the grant of authority in section 5.1 encompassed the authority to certify claims.

The plaintiff further argues that the "superior authority" of the Policy Committee did not limit Mr. Nordlund's authority. To the contrary, plaintiff argues that Mr. Nordlund's position as designated representative to the Policy Committee is an additional source of authority. Plaintiff argues that because the Policy Committee acted by majority vote and Kiewit Industrial Co., acting through Mr. Nordlund held the majority of votes, he also had control over the policy making and oversight of all KTH affairs. He was authorized by that section to act on behalf of the joint venture. The authority to certify claims is implicit in the language in section 4.5(f), which authorizes the Policy Committee to "consider all claims and disputes of any kind between the joint venture and the Owner, subcontractor and/or third Parties and to authorize negotiation, arbitration, litigation and/or any other process for their resolution and to authorize the settlement thereof." Since litigation under the Contracts Dispute Act is subject to the certification requirements, there is no reason for the Parties to grant additional authority to certify claims. The plaintiff argues that there is no requirement that an agreement include the specific words "certify claims" in order to satisfy the certification requirements.

The Power of Attorney is yet another source of authority to certify claims according to the plaintiff. As with the grant of authority to serve as Managing Party in section 5.1, the authority to certify claims is included in the language giving Mr. Nordlund the power to execute change orders and contract modifications. The plaintiff argues that this was intended by the Parties, that the government understood Mr. Nordlund's authority to do so, and that this court should recognize the intentions of the parties and course of dealings to interpret the joint venture agreement.

 The rules of contract interpretation apply in determining the scope of an agent's powers. *See System Investment Corp. v. Montview Acceptance Corp.,* 355 F.2d 463 (10th Cir.1966). It is well established that contract interpretation is a matter of law for the court to decide. *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985). Where the provisions of a contract are phrased in clear and unambiguous language, "the words of those provisions must be given their plain and ordinary meaning by the court in defining the rights and obligations of the parties ...." *Elden v. United States,* 617 F.2d 254,

260–261, 223 Ct.Cl. 239 (1980); *accord American Science and Eng'g., Inc. v. United States,* 663 F.2d 82, 88, 229 Ct.Cl. 47 (1981). The preferred interpretation of a contract will give meaning to all parts of a contract, *Fortec,* 760 F.2d at 1291, without reading single phrases out of context or to the exclusion of others. *Hol–Gar Mfg. Corp. v. United States,* 351 F.2d 972, 979, 169 Ct.Cl. 384 (1965). The "court should reject any interpretation which would render portions of the contract meaningless, useless, ineffective, or superfluous." *Boehm v. United States,* 22 Cl. Ct. 511, 516 (1991); *Hol–Gar,* 351 F.2d at 979.

The court finds that the interpretations advanced by both plaintiff and defendant are reasonable. Neither interpretation renders other portions of the contract meaningless or useless. The question is merely one of the scope of the Agreement. If this court broadly construes phrases such as, "the Managing Party shall have direct charge and supervision of all matters necessary to and connected with the performance of the Construction Contract" in section 5.1 and, "to authorize . . . litigation . . . and to authorize the settlement thereof" under section 4.5(f), the authority to certify claims is included in the Agreement. In this case, the Motion to Dismiss should be denied. On the other hand, if the court adopts the maxim that express mention of one thing implies the exclusion .of others, then it appears that the co-venturers did not include the authority to certify the claims in the Agreement or in the Power of Attorney. The co-venturers did not expressly include the authority to certify claims in the written agreement which spells out the Parties' intentions, therefore the Motion to Dismiss should be granted.

 Since both plaintiff and defendant have advanced reasonable interpretations of the joint venture agreement and the Power of Attorney, the court finds that the documents are ambiguous. A contract may be said to be ambiguous if it is "susceptible of two different interpretations, each of which is found to be consistent with the contract's language." *Blinder-*

*man Construction Company v. United States,* 17 Cl.Ct. 860, 863 (1989) (citing *Sun Shipbuilding & Dry Dock Co. v. United States,* 393 F.2d 807, 815–16, 183 Ct.Cl. 358, 372 (1968)); *Maintenance Engineers, Inc. v. United States,* 21 Cl.Ct. 553, 559 (1990). The mere fact that the parties do not agree upon the meaning of the language of the contract does not render the language ambiguous. *Neal & Co. v. United States,* 19 Cl.Ct. 463, 471 (1990); *Merrick v. United States,* 18 Cl.Ct. 718 (1989). Rather, there must be a reasonable uncertainty of meaning. *Neal,* 19 Cl.Ct. at 471; (relying on *International Business Investments v. United States,* 17 Cl.Ct. 122, 125 (1989)).

 The court must construe ambiguities in a contract against the drafter of the instrument according to the doctrine of *contra proferentem.* Therefore, although the plaintiff's interpretation is reasonable, this court must construe the agreement against KTH and find that the authority to certify claims on behalf of the joint venture was not vested in Kiewit Industrial Co., acting through its designated representative Mr. Nordlund. While there is no requirement that parties use the specific words "to certify claims" in order to delegate the authority to do so, there must be clear and unambiguous evidence to show that the authority was in fact delegated. This evidence is not before the court at this time.

This result is the better interpretation of the agreement in any case, as the court must construe the grant of authority with the purpose of the certification requirement in mind. "Congress specified the assertions that contractors were to certify to before filing a claim and provided for recovery of damages and costs where the contractor misrepresents facts or commits fraud. . . . In light of [41 U.S.C. § 604], contractors should not be presumed to attest to the required assertions lightly." *United States v. Turner Constr. Co.,* 827 F.2d 1554, 1561 (1987). Although, as plaintiff points out, courts have held certifications valid in circumstances in which only one party to a joint venture has signed, the

case at bar is distinguishable. In *Cox,* there was an oral agreement but no written joint venture agreement, and the record showed that the government dealt exclusively with Mr. Cox, who signed the certification. The court found that he did have the authority to bind the joint venture. *Cox Constr. Co.,* 21 Cl.Ct. at 101. The circumstances were similar in *KDH Corp.,* 23 Cl.Ct. at 43, where there was no written agreement, the authority of one co-venturer to bind the other was undisputed, and the course of dealings reflected the authority to bind the other. Unlike the situations in *Cox* and *KDH,* the written agreement prevents the court from finding the requisite authority for Kiewit Industrial Co. to bind the joint venture.

Plaintiff submits voluminous materials designed to show that the co-joint venturers and the parties to the construction contract understood the authority of Mr. Nordlund to bind the joint venture. Affidavits were submitted couched in language such as, "we intended" and, "it was our intention that" Mr. Nordlund have the authority to bind the joint venture. This material, however, does not convince the court that Mr. Nordlund was in actuality granted the authority to certify the claims for the joint venture. "[R]esort to affidavits is less trustworthy than reliance on contemporaneous evidence to establish authorization by circumstances or course of dealings.... The contractor should not be permitted to either elude or establish the validity of its certification by new evidence created after the date on which certification was made." *KDH Corp.,* 23 Cl.Ct. at 43. "The court is reluctant to place much weight on these after the fact descriptions of the [certifier's] duties." *Al Johnson Constr. Co. v. United States,* 19 Cl.Ct. 732, 735 (1990). As in *Al Johnson,* this court finds it difficult to believe that the authority to bind the joint venture is as broad as the affidavits would have this court find.

Additionally, the affidavits, fairly construed, do not foreclose the possibility that Tulsa/Houston, Inc. acting through Mr. James could escape liability on the fraud claim. In *Christie–Willamette,* 85–1 B.C.A. para. 17,930 (NASA BCA 1985), the board considered that the contractor could not credibly deny that he had certified the claims in the event fraud was raised. The evidence showed that the senior executives to the parties to the joint venture were fully informed about the claims, knew that the claim was to be prepared and certified, and fully approved of the actions. Under the circumstances, the contractors would not be able to evade the congressional purpose, and the court found that the certification was valid. That avenue of defense is not closed to Mr. James of Tulsa–Houston, Inc. based on the evidence before the court.[5] It would be closed if he had signed the certification or had expressly delegated the authority to certify claims to another. Given that the certification requirements must be strictly construed by the court and that the standard of proof in a fraud claim is so high, this court feels compelled to find that the authority of Kiewit Industrial Co. to bind either the joint venture or Tulsa/Houston, Inc. does not exist. Absent persuasive evidence that the authority to certify the claim on behalf of a joint venture existed when the claims were submitted to the contracting officer, the court has no jurisdiction to hear that claim.

This was a difficult case for the court. The court is persuaded that it is the correct decision, however, on the basis of the materials at hand given the purpose of the certification requirements, the strictures attendant to a finding of fraud, and the potential for avoidance of a fraud charge because of the lack of certainty as to whether both, only one, or none of the joint venturers were bound by the certifications at bar. In joint venture situations, it is not unreasonable to require appropriate officials from

---

**5.** There is no evidence advanced by the plaintiff contemporaneous with the certification of the claims to show that the co-venturers were informed about the claims. There are no indications that the issue was ever raised at a Policy Committee meeting. There is no weighty evidence that the co-venturers approved of Mr. Nordlund's actions at the time of certification. The affidavits submitted suggest only that Mr. James of Tulsa–Houston, Inc. agrees at this point in the proceedings that Mr. Nordlund was authorized to sign the certifications.

both venture companies to certify government claims. In the alternative, the joint venturers should have in existence at the time of certification some overt, preferably written designation or delegation of authority by one joint venturer to be bound by the certification of the other joint venturer.

### D. The Status Requirement

Beyond the issue of whether Mr. Nordlund, as Kiewit Industrial Co.'s representative was authorized to bind the joint venture, the plaintiff must still show that Kiewit Industrial Co., acting through Mr. Nordlund, had the status to certify the claims. As the court stated earlier, the regulations provide that the certification shall be executed by "[a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs."[6] 48 C.F.R. (FAR) § 33.-207(c)(2)(ii). It is not strictly necessary for the court to reach this issue because plaintiff failed to meet the "authority" requirement. The court therefore addresses this issue as an alternate ground for dismissal. It does not appear that the status requirement is met.

There are two issues to discuss. The first is whether Kiewit Industrial Co. is the "officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs." The second is whether Mr. Nordlund was authorized by Kiewit Industrial Co. to authorize claims on their behalf.

■ It appears that there is insufficient evidence to establish that plaintiff can satisfy either of these requirements. The joint venture agreement clearly designates Kiewit Industrial Co. as the Managing Party, but specifically makes that authority subject to the superior authority of the Policy Committee. The limitation would be rendered meaningless if the court construed the agreement to vest the "overall responsibility for the conduct of the contractor's affairs" in the Managing Party. Therefore, it appears that the Managing Party does not have the required status to certify the claims. As discussed above, however, the Policy Committee was not granted the authority to certify claims on behalf of the joint venture. As in *Universal*, it appears that there is no one person who meets the requirements to certify the claims. *Universal*, 24 Cl.Ct. at 248. Therefore, each Party to the joint venture agreement would need to sign the certification in order to strictly comply with the certification requirements.

■ The second issue is whether Mr. Nordlund had the authority to bind Kiewit Industrial Co. by certifying the claims. Although Mr. Nordlund was at all relevant times a District Manager of the Power and Process District, the affidavits submitted by plaintiff suggest that Mr. Nordlund reported to Mr. Keene. Mr. Nordlund's affidavit states that he consulted with Mr. Keene about these claims, but did not get Mr. Keene's approval to do so, nor was he required to do so. As the court has already mentioned, the affidavits do not convince the court. But, even granting that Mr. Nordlund did not need to get authority to submit the claims from Mr. Keene, the court is still not convinced that Mr. Nordlund had the authority to bind Kiewit Industrial Co.

Although Mr. Nordlund may have had complete control over the Power and Process District, that district was not a Party to the joint venture agreement. The Agreement lists Kiewit Industrial Co. as the Party to the agreement. Mr. Keene is the President of Kiewit Industrial Co. The affidavits suggest that it is he who has overall responsibility for the conduct of its affairs. Mr. Nordlund is the designated representative to the joint venture, but that alone does not satisfy the requirement that he have the authority to bind the company. *See Al Johnson Constr. Co.* 19 Cl.Ct. at 738 (certification held invalid where project manager who signed on behalf of contractor was not a "senior company official" within the contemplation of the regulations). The evidence is insufficient for the

6. There is no question that Mr. Nordlund fails to meet the "official in charge at the contractors plant or location" prong of the FAR requirements.

court to find that Mr. Nordlund had the requisite authority to bind Kiewit Industrial Co.

### CONCLUSION

For the reasons discussed, the court finds that the certifications were insufficient to invoke the jurisdiction of this court. As the court finds that there is "no just reason for delay," the Clerk is directed to enter final judgment, dismissing for lack of subject matter jurisdiction, Counts I, II, III, V, VII, VIII, and IX of plaintiff's complaint, pursuant to RUSCC Rule 54(b).[7] The court retains jurisdiction over Count IV of plaintiff's complaint.[8] The parties shall advise the court of the status of Count IV within 30 days of the date of this opinion. No costs.

---

**7.** The plaintiff is not precluded from properly certifying its claim and resubmitting it to the Contracting Officer, and if denied relief, appealing thereafter either to the Administrative Board or to this court. Plaintiff is not without a remedy as a result of this decision. *See United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 581 (Fed.Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991);

*Universal Coatings/Won Ill Co. v. United States,* 24 Cl.Ct. 241, 248 (1991).

**8.** The status of Count IV was discussed at oral argument. The defendant indicated that the court may lack jurisdiction over Count IV as well, but was unprepared to argue the merits of this contention at that time.