# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Bell Helicopter Textron Inc. and ) | ASBCA No. 59561 |
|   The Boeing Company ) | |
| ) | |
| Under Contract Nos. N00019-96-C-0054 ) | |
|                 N00019-99-C-1090 ) | |
|                 N00019-05-C-0002 ) | |
|                 N00019-06-C-0292 ) | |
|                 N00019-07-C-0001 ) | |

APPEARANCES FOR THE APPELLANT:      Justin M. Ganderson, Esq
                                              Frederic M. Levy, Esq.
                                                Covington & Burling LLP
                                                    Washington, DC

APPEARANCES FOR THE GOVERNMENT:     Ronald J. Borro, Esq.
                                              Navy Chief Trial Attorney
                                            Richard A. Gallivan, Esq.
                                            Assistant Director
                                            David L. Koman, Esq.
                                            Senior Trial Attorney

## <u>OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON DEEMED GOVERNMENT MOTION TO DISMISS FOR LACK OF JURISDICTION</u>

The Board requested briefing in response to an affirmative defense in which the government challenged the Board's jurisdiction. In its brief, the government questions the authority of the person who certified the claim and contends that the appeal should have been brought by "Bell Boeing Joint Project Office" and not by the two entities listed above. We have treated the government's brief as a motion to dismiss for lack of jurisdiction. For the reasons set forth below, we deny the motion.

## <u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

*The Contracts*

1. This appeal involves five contracts to fabricate Multi-Purpose, Vertical

(MV)-22 Osprey aircraft (and on some contracts the Air Force variant, the Cargo) as follows:

| Date | Contractor | Contract No. |
|---|---|---|
| 7 June 1996 | Bell-Boeing Joint Program Office | N00019-96-C-0054 (Contract 0054) (R4, tab 1 at 3) |
| 31 March 1999 | Bell-Boeing Joint Program Office | N00019-99-C-1090 (Contract 1090) (R4, tab 6 at 578) |
| 24 January 2005 | Bell Boeing Joint Project Office | N00019-05-C-0002 (Contract 0002) (R4, tab 15 at 1165) |
| 28 December 2005 | Bell Boeing Joint Project Office | N00019-06-C-0292 (Contract 0292) (R4, tab 32 at 2432) |
| 2 April 2007 | Bell Boeing Joint Project Office | N00019-07-C-0001 (Contract 0001) (R4, tab 59 at 3058) |

*The Bell-Boeing Business Relationship*

2. On 18 December 1995 (about six months before execution of the first of the five contracts at issue), Bell Helicopter Textron Inc. (Bell Helicopter) and The Boeing Company, Defense & Space Group (Boeing), (collectively Bell Boeing) entered into a joint venture agreement for the V-22 program (gov't br., ex. 2). The agreement stated that the parties had entered into a teaming agreement back in 1982 with respect to the JVX program, which is now known as the V-22 program (*id.* at 1). The teaming agreement had been amended several times over the years (*id.*).

3. Paragraph F of the "RECITALS" section of the joint venture agreement stated that the parties had characterized their relationship under the teaming agreement as a partnership for federal income tax purposes and had agreed to continue to do so (gov't br., ex. 2 at 1).

4. Article three of the joint venture agreement, "INTERESTS OF JOINT VENTURE PARTIES," provided that work would be performed on V-22 contracts so as to maintain an "equal (50/50) division of work" and that the parties would share

2

equally all aspects of joint venture activity, including profits and losses (gov't br., ex. 2 at 4).

5. Article 14 of the agreement, "CONTRACTING AUTHORITY," provided that all proposals should state that the award of any V-22 contract should be to the "Bell-Boeing Tiltrotor Team" (gov't br., ex. 2 at 33). However, as we have found (SOF ¶ 1), none of the contracts were actually awarded to Bell-Boeing Tiltrotor Team. The proposals are not in the record; it is not clear why the contracts were awarded to Bell-Boeing Joint Program Office and Bell Boeing Joint Project Office. Modification No. P00318 to Contract 0054 identified the contractor as Bell Boeing Tilt Rotor Team (R4, tab 4), but this appears to have been an exception.

6. On or about 22 August 2006 (after the fourth but before the fifth contract listed above), Bell and Boeing entered into a "STRATEGIC ALLIANCE AGREEMENT" (SAA) which, as appellants put it in their brief, superseded the joint venture agreement (gov't br., ex. 11). After referencing the December 1995 joint venture agreement, the opening paragraph of the SAA stated "This Agreement is converted from a joint venture agreement to a Strategic Alliance Agreement and consolidated to include all amendments to the joint venture agreement as of the 11th day of August, 2006..." (*id.* at 4).

7. The original SAA, like the joint venture agreement, stated that all contracts would be awarded to the Bell Boeing Tiltrotor Team (gov't br., ex. 11 at 39). However, amendment one to the SAA stated that contracts would be awarded to the Bell Boeing Joint Project Office (*id.* at 40, article 14.1). The date of amendment one is not in the record.[1]

8. Just as in the joint venture agreement, paragraph F of the SAA recitals stated that the parties would continue to characterize their relationship as a partnership for federal income tax purposes (gov't br., ex. 11 at 5). However, amendment two to the SAA stated that as of 1 January 2010 (more than two years after award of the last of the five contracts), the SAA would no longer be considered a partnership for federal tax purposes and that each party would be responsible for reporting the appropriate revenue and costs for the agreement on its own corporate income tax return (*id.* at 20, article 6.2.2). The date of SAA amendment two is not in the record.

9. Similar to the joint venture agreement, the SAA emphasized that, unless

_____

[1] The government filed a conformed copy of the SAA that indicates language added or stricken by amendments but not the amendment dates.

3

stated otherwise, everything would continue to be "50/50" and that:

> [T]he Parties shall share equally all aspects of the Strategic Alliance activity including profits and losses, Allowable Costs, fees paid by Customers, expenses, taxable income or loss and tax credits, and other obligations and liabilities incurred in the furtherance of Strategic Alliance work.

(Gov't br., ex. 11 at 9, article 3.1-3.2)

10. Amendment one to the SAA added the following sentence to article 14, Contracting Authority: "The Parties intend to act in any contract covered by this Agreement as dual primes"[2] (gov't br., ex. 11 at 40). As stated above, the record does not reveal the date of amendment one but a 28 August 2009 memorandum from the Defense Contract Audit Agency indicates that the government knew of the dual prime arrangement by that date (app. resp., ex. B at 1).

11. There is no evidence in the record that the contracting officer novated any of the contracts from a joint venture to a dual prime arrangement.

*Actions Relating to Claim Certification*

12. In March and April 2012, Bell, through its Executive Vice President Programs, and Boeing, through its Vice President and General Manager, Mobility Division, executed a power of attorney that granted a number of individuals, including James Ariail and William Reis, the power to negotiate and execute "bids...contracts, contract modifications, change orders, certificates...and similar documents." Further, it granted them authority to perform "every act whatsoever requisite or necessary to be done in or about the exercise of the powers and authority" granted. (App. resp., ex. C at 1)

13. These same representatives of Bell and Boeing also issued a "SPECIAL INSTRUCTION CONCERNING POWER OF ATTORNEY" to Mr. Ariail. This document instructed Mr. Ariail not to exercise his power of attorney "unless the terms and conditions to be signed have been subjected to a coordinated review as to their content acceptability and legal sufficiency" and approved by both Bell and Boeing. (App. resp., ex. C. at 5)

---

[2] Article two of the SAA, Formation, Name and Places of Business, states that the SAA applies to all contracts entered into by the parties after 22 October 1992 (gov't br., ex. 11 at 6).

4

14. On 17 April 2013, appellants submitted a certified claim for more than $8 million. They submitted the claim on letterhead that stated "Bell Boeing The Tiltrotor Team" at the top and "Bell Boeing V-22 Joint Project Office" at the bottom. (Gov't br., ex. 14) Appellants referred to themselves as "Bell Boeing" in the cover letter. In the body of the claim, they identified each company by its corporate name and thereafter referred to themselves as "Bell Boeing" (R4, tab 79 at 4626).

15. James Ariail certified the claim. He stated in relevant part that the claim "accurately reflects that contract adjustment for which Bell Boeing believes the Government is liable; and that I am duly authorized to certify the claims on behalf of Bell Boeing." (Gov't br., ex. 16) The contracting officer denied the claim on 17 June 2014 (R4, tab 84). The first page of that decision refers to the contractor as both "Bell-Boeing Joint Program Office" and "Bell Boeing Joint Project Office" and thereafter refers to them (or it) as "Bell Boeing" (*id.*).

16. Appellants have provided the Board with a series of emails exchanged between Bell and Boeing employees on 10 April 2013, one week before claim submission. In general, these emails indicate that representatives of both companies reviewed the claim. In the penultimate email in this chain, Mr. Reis, Boeing's Senior Manager V-22 Contracts, Pricing and Estimating, informed Mr. Ariail that the claim was "Good to go." (App. resp., ex. D at 1, Reis decl. ¶ 2)

17. Both Mr. Reis and Mr. Ariail submitted declarations. In his declaration, Mr. Reis testified that he reviewed and provided comments on the claim and approved Mr. Ariail's certification and its submission to the contracting officer (app. resp., Reis decl. ¶ 3). Mr. Arial testified that he was at that time "Manager US Contracts (V-22)" for Bell and had authority to certify the claim on behalf of Bell (app. resp., Ariail decl. ¶¶ 2-4).

18. On 15 September 2014, appellants filed this appeal listing the full name of each corporation as appellants, as identified in the caption above. Mr. Ariail testified that he coordinated review of the notice of appeal with Boeing and that both companies approved filing of the notice of appeal (app. resp., Ariail decl. ¶ 6). Mr. Reis confirmed in his declaration that he concurred in the filing of the notice of appeal (app. resp., Reis decl. ¶ 4).

## DECISION

The government challenges Mr. Ariail's authority to certify the claim on behalf of the appellants, which the government contends was a joint venture at all times. The government also contends that the appeal should have been brought by Bell Boeing Joint Project Office. In the government's view, both issues may deprive the Board of jurisdiction. We will consider these contentions in turn.

5

*The Authority of James Ariail to Certify the Claim*

The Contract Disputes Act (CDA) has been amended several times over the years but the provisions relevant to claim certification have remained consistent from June 1996, when the parties entered into the first of the contracts at issue, until today. Contractor claims must be submitted to a contracting officer and claims over $100,000 must be certified. 41 U.S.C. § 7103(a)(1), (b). The certification "may be executed by an individual authorized to bind the contractor with respect to the claim." *Id.*, § 7103(b)(2). Federal Acquisition Regulation (FAR) 33.207(e) clarifies that the certification may be executed "by any person duly authorized to bind the contractor with respect to the claim."

The Board cannot entertain an appeal if the claim is not certified. *Al Rafideen Co.*, ASBCA No. 59156, 15-1 BCA ¶ 35,983. We possess jurisdiction if there is a certification that contains a defect, but it must be corrected before we can enter final judgment. 41 U.S.C. § 7103(b)(3). Given this distinction, the question at hand is whether a certification that lacked authority is tantamount to no certification at all, or whether it is merely a defective certification. The answer is that it is clearly the latter. A "defective certification" is defined in the FAR to include "a certificate...which is not executed by a person duly authorized to bind the contractor with respect to the claim." 48 C.F.R. § 33.201. Accordingly, we possess jurisdiction even if Mr. Ariail lacked authority to certify the claim. We will examine Mr. Ariail's authority solely to determine whether Bell Boeing needs to file a corrected certification.

The government makes two contentions in its opening brief concerning Mr. Ariail's authority to certify the claim. First, it contends that "Mr. Ariail by signing on behalf of 'Bell Boeing' appears to only be signing on behalf of Bell Helicopter Textron Inc. and not Bell Boeing Joint Project Office" (gov't br. at 10). The apparent source of this somewhat puzzling contention is not the certification (which refers to "Bell Boeing" three times), but the cover page of the claim (gov't br., ex. 15), which, appellants concede, has a typographical error (app. resp. at 7, ¶ 9 n.5). While the first sentence of the executive summary of the claim states that Bell Helicopter and Boeing are "collectively known as 'Bell Boeing,'" (R4, tab 79 at 4626), the cover page omits the words "collectively known as" (gov't br., ex. 15). Thus, although not spelled out in the government's brief, the government appears to read the cover page to define "Bell Boeing" as only Bell. We do not agree that the cover page created any serious confusion. The executive summary makes it abundantly clear that "Bell Boeing" refers to both companies.

Second, the government contends that article 14.2 of the SAA required Mr. Ariail (a Bell employee) to have prior written approval from Boeing before he certified the claim. That article provides that "Neither Party hereto shall execute

Proposals, Contracts, modifications thereto, or other contractual instruments in the name of and on behalf of the Strategic Alliance without the prior written approval of the other Party" (gov't br., ex. 11 at 41). The government assumes that a claim certification is a proposal, contract, modification, or other contractual instrument. However, we conclude that the power of attorney and the special instruction directly speak to Mr. Ariail's authority to issue certificates (SOF ¶¶ 12-13). These documents gave Mr. Ariail the authority to issue certificates as long as he engaged in coordinated review with Boeing. (The government does not contend that the Bell and Boeing officials who issued the power of attorney lacked the authority to do so.) We find that the emails Mr. Ariail exchanged with Mr. Reis, which concluded with Mr. Reis stating that the claim was "Good to go" (SOF ¶¶ 16-17), as amplified by the testimony in the Reis and Ariail declarations, are convincing evidence that Mr. Ariail carried out his responsibilities in accordance with the power of attorney and special instruction.

To be fair, the government did not possess the 10 April 2013 emails or the Reis and Ariail declarations when it filed its opening brief. But, undeterred, the government presses on in its reply brief. It rejects the sufficiency of the Ariail and Reis declarations because they do not provide contemporaneous documents that demonstrate that both Boeing and Bell approved the claim submission and the certification. (Gov't reply at 4). The government contends that the 10 April 2013 emails are not sufficient for these purposes. We disagree. It suffices to say that the level of documentation that the government is seeking is not required by the CDA, the FAR, or the power of attorney and special instruction. *See Sadelmi Joint Venture v. Dalton*, 5 F.3d 510, 513 (Fed. Cir. 1993) (relying on affidavits to conclude certifier had authority).

Finally, the cases that the government cites are inapposite. We observed above that the CDA certification requirements have been the same since the parties executed the first contract at issue in 1996. These standards relate back to enactment of the Federal Courts Administration Act (FCAA) of 1992 on 29 October 1992, which, among other things provided that a defective certification does not deprive the Board of jurisdiction. Pub. L. No. 102-572, § 907(a). Until enactment of the FCAA, FAR 33.207(c)(2) restricted the categories of individuals who could certify claims to:

> (i) A senior company official in charge at the contractor's plant or location involved; or

> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

Because these certification requirements were both restrictive and viewed to be jurisdictional, they spawned a significant amount of litigation. For example, in

*Universal Canvas, Inc. v. Stone*, 975 F.2d 847, 849-50 (Fed. Cir. 1992), the Federal Circuit held that we lacked jurisdiction to consider an appeal even though the claim had been certified by the contractor's vice president for accounting because he did not meet the section 33.207(c) requirements.

Notably, all of the opinions that the government cites in its briefs are from this bygone era. For example, in its reply brief, the government relies on *Kiewit/Tulsa-Houston v. United States*, 25 Cl. Ct. 110 (1992), which involved a claim and lawsuit filed long before enactment of the FCAA. In that case, the Claims Court granted the government's motion to dismiss for lack of jurisdiction in part because the certification did not meet the requirements of FAR 33.207. *Id.* at 120-21. The court also based its decision on the specific language of the joint venture agreement and the power of attorney. Among other things, the court held that the power of attorney at issue did not grant the authority to certify claims. *Id.* at 118-19. We have reached the opposite conclusion based on the specific language of the power of attorney in this case. In short, *Kiewit/Tulsa* involves different facts and different law, and is not in any event binding upon us.

*We Construe This Appeal As Filed in the Name of Bell Boeing Joint Project Office*

The CDA provides that "A contractor...may appeal the [contracting officer's final] decision to an agency board..." 41 U.S.C. § 7104(a). The CDA defines a contractor as "a party to a Federal Government contract other than the Federal Government." 41 U.S.C. § 7101(7).

The government contends that this appeal should have been brought in the name of "Bell-Boeing Joint Project Office," and not by Boeing and Bell Helicopter in their own corporate names (gov't br. at 1). The government does not cite any precedent holding that filing in this manner deprives the Board of jurisdiction.

As our findings indicate, there is some confusion as to the correct name of the contractor and the nature of the Bell Boeing business arrangement (SOF ¶¶ 1, 5-8). However, it is clear that Bell Boeing was a joint venture through the execution date of the first four of the five contracts at issue and that there is no evidence of any novation (SOF ¶¶ 6, 15). It is also clear that the contracting office issued the fifth contract to Bell Boeing Joint Project Office (SOF ¶ 1), which was consistent with the name used on the most recent contracts. The contractor did not object to the issuance of the fifth contract by informing the contracting officer that the listed name no longer reflected the business relationship between Bell and Boeing. Instead, it signed the contract as issued by the contracting officer (*id.*). Finally, it is also clear that Bell and Boeing both approved the filing of this appeal (SOF ¶ 18).

8

Under these circumstances, we see no basis to question our jurisdiction. However, to remain consistent with the requirement in the CDA that the "contractor" file the appeal we will: 1) construe this appeal as having been brought in the name of Bell Boeing Joint Project Office, the named contractor in the last three contracts; and 2) treat Bell Boeing Joint Project Office and Bell-Boeing Joint Program Office as different names for the same entity.

## CONCLUSION

For the foregoing reasons, the government's motion is denied.

Dated: 16 September 2015

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59561, Appeal of Bell Helicopter Textron Inc. and The Boeing Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9